CULLEN, Ch. J., GRAY, WERNER, HISCOCK, CHASE and COLLIN, JJ., concur.

Appeal dismissed.

---

In the Matter of the Application of CHARLES A. RUNK, as Substituted Trustee under the Will of ANNIE JOY, Deceased, Appellant, for a Writ of Mandamus against ABNER C. THOMAS, a Surrogate of the County of New York, Respondent.

Surrogates' Courts — accounting of successor to testamentary trustee — mandamus will lie to compel Surrogate's Court to entertain proceeding for the judicial settlement of the accounts of a trustee appointed by the Supreme Court — origin, history, powers and jurisdiction of Surrogates' Courts — construction of statutes conferring jurisdiction over trusts and trustees upon Surrogates' Courts.

The history and general jurisdiction of Surrogates' Courts considered and statutory provisions relative to their jurisdiction over trusts and trustees construed.

The Constitution has perpetuated the ancient equity powers of the Court of Chancery in and through the Supreme Court, but it has also given to the legislature the right to invest Surrogates' Courts with such jurisdiction as may be deemed wise or expedient. (Art. 6, § 15.) The powers thus delegated to the Surrogates' Courts do not deprive the Supreme Court of any jurisdiction it has ever had. They are simply additions to or enlargements of the jurisdiction of the Surrogates' Courts.

Notwithstanding the fact that Surrogates' Courts are now courts of record, they possess no jurisdiction except such as has been specially conferred by statute, together with such incidental powers as may be requisite to enable them to effectually exercise the jurisdiction actually granted.

A Surrogate's Court has power by statute to entertain a proceeding for the judicial settlement of the accounts of a trustee appointed, by the Supreme Court, as the successor of a deceased testamentary trustee named in a will, and any trustee, whether appointed by a last will or testament, or by any other competent authority, is now authorized by express legislative enactment to render his accounts to that court.

There is a technical distinction but no real difference between persons appointed to execute trusts that have devolved on the court and per-

sons appointed by last will and testament. Their duties in either case are the same.

While a peremptory writ of mandamus, directed to a judicial officer, requiring him to take cognizance of a proceeding in his court, may only be issued, in the first instance, where the applicant establishes a clear right to the mandamus as a matter of law (Code Civ. Pro. § 2070), and it will never be issued against a court or judicial officer when there is a remedy by appeal from a decision which is attacked as being erroneous, the writ is properly invoked upon the denial by the Surrogate's Court of an *ex parte* application for leave to account made by a substituted trustee.

*Matter of Runk* v. *Thomas*, 138 App. Div. 789, reversed.

(Argued January 3, 1911; decided January 27, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 23, 1910, which affirmed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the defendant, as a surrogate of the county of New York, to entertain a proceeding for an accounting of the acts of the petitioner as trustee and to issue a citation accordingly.

The facts, so far as material, are stated in the opinion.

*Charles A. Runk* for appellant. The surrogate has jurisdiction to entertain the proceedings by a substituted trustee appointed by the Supreme Court on an accounting instituted by such trustee. (L. 1850, ch. 272; L. 1866, ch. 115; L. 1867, ch. 782; L. 1870, ch. 539; L. 1871, ch. 482; L. 1880, ch. 178; Code Civ. Pro. §§ 2802, 2818; *Royce* v. *Adams*, 123 N. Y. 402; *Matter of Delaplaine*, 45 Hun, 225; *Matter of Bartels*, N. Y. L. J., April 29, 1908; *Matter of Wuerz*, N. Y. L. J., Jan. 4, 1906; *Matter of Pitcher*, 4 N. Y. Law Bull. 32; *Matter of Robertson*, N. Y. L. J., Dec. 17, 1909; *Wager* v. *Wager*, 89 N. Y. 161; *Anderson* v. *Anderson*, 112 N. Y. 104; *Matter of Smith*, 120 App. Div. 199.) Mandamus is the only remedy for reviewing the action of the surrogate. The order which the surrogate entered denying the application of the substituted trustee for a citation cannot be appealed from; such order so entered was *ex parte*, and there can be no respondent before the court. (*Matter*

*of Johnson*, 27 Hun, 538 ; *People ex rel. Schleher* v. *Common Council*, 30 Hun, 636 ; *Matter of Nottingham*, 88 Hun, 443 ; *Hays* v. *C. G. Co.*, 143 N. Y. 641 ; *Matter of Kelsey* v. *Church*, 112 App. Div. 408 ; *Aldinger* v. *Pugh*, 57 Hun, 181 ; 132 N. Y. 403 ; Code Civ. Pro. § 2070.)

*Andrew L. Dalton* and *Abner C. Thomas* for respondent. The Code of Civil Procedure permits any trustee appointed by any competent authority to execute any trust created by any last will and testament to render and finally settle his accounts before the surrogate. (Code Civ. Pro. § 2802.) The petitioner's appointment by the Supreme Court was, as his appointment by the surrogate would have been, a "designation by a competent authority to execute a trust created by a will," and he became by virtue thereof a "testamentary trustee" (Code Civ. Pro. § 2472, subd. 6), entitled to every right and remedy and with all of the duties incident to that fact. By such an appointment the Supreme Court did not "take possession" of the estate of the decedent, and in no just sense did the testamentary trustee become its mere agent. The jurisdiction of the Supreme Court over him was ample and complete, as it is over every trustee, but this jurisdiction did not extinguish the jurisdiction granted by statute to the surrogate. (*Post* v. *Ingraham*, 122 App. Div. 738 ; *Matter of Smith*, 120 App. Div. 199 ; *C. Cent. Nat. Bank* v. *Toplitz*, 113 App. Div. 73 ; 188 N. Y. 634 ; *Borrowe* v. *Corbin*, 31 App. Div. 172 ; 165 N. Y. 634.)

Werner, J. The question to be decided upon this appeal is whether the Surrogate's Court has power to entertain a proceeding for the judicial settlement of the accounts of a trustee appointed, by the Supreme Court, as the successor of a deceased testamentary trustee named in a will. Before proceeding to discuss comprehensively the general question thus stated it will be useful to recite briefly the facts upon which it arises in the case at bar.

One Annie Joy died leaving a last will and testament in which she nominated two executors. Upon the death of one

of these executors another was appointed to fill the vacancy. This last-mentioned appointee survived his co-executor and continued in the performance of his duties, filing his executorial account in the Surrogate's Court of New York county on the 15th day of May, 1891, and receiving a decree on the 28th day of September, 1891, settling his accounts except as to two bonds and mortgages in the aggregate sum of ten thousand dollars, which he was directed to transfer to himself as trustee to hold during the life, and for the benefit, of certain *cestuis que trust*, and after the expiration of the trust period to distribute the corpus of the trust fund in accordance with the directions of the will. This trustee died on the 24th day of August, 1904, and thereupon the appellant was appointed by the Supreme Court as substituted trustee, under an order which adjudged that he be "appointed the trustee of the property and effects comprising the trust estate under said last will and testament and codicil thereof of Annie Joy, deceased, in the place and stead of said Pearson Halstead, deceased, with all the powers, rights, duties and authority given to him, said Pearson Halstead, in and by said last will and testament and codicil thereof of Annie Joy, deceased." The appellant duly qualified and acted as such substituted trustee until December 26th, 1909, when the corpus of so much of the trust fund as was represented by one of these mortgages was released from the trust by the death of the *cestui que trust*. Thereupon the appellant presented to the Surrogate's Court of New York county a petition setting forth the facts, praying for the judicial settlement of his accounts, and for the issuance of citations to the parties in interest. The prayer of the petition was denied "upon the ground that the Surrogate has no jurisdiction to entertain the proceeding." The appellant then applied to the Supreme Court at Special Term for a writ of peremptory mandamus directing the surrogate of New York county to entertain the proceeding for an accounting. That application was also denied, and from the order entered at Special Term the appellant took an appeal to the Appellate Division where there was an affirmance by a divided court.

The surrogate denied the appellant's petition for leave to account, not because he was personally convinced that he lacked jurisdiction, but for the reason that he felt constrained to do so by the decision of the Appellate Division in the first department in *Matter of Leavitt* (135 App. Div. 7). The same Appellate Division, upon the appeal in this proceeding, held that the surrogate was right in refusing to entertain the petition for an accounting, but disagreed with him as to the effect of the decision in *Matter of Leavitt*, because in that case the only question actually decided was that there was no necessity for the appointment of a substituted trustee, since there were surviving trustees who were competent to properly administer the trust. While the learned justice who wrote for the Appellate Division in the case at bar was entirely correct in his statement of what was decided in *Matter of Leavitt*, it is also true that there are expressions in the opinion in that case which clearly warranted the inference that if the question should fairly arise in that court it would be held that the Surrogate's Court has no power to appoint a successor to a deceased trustee when the latter was appointed by the Supreme Court, and that all proceedings for accountings by trustees appointed in the latter court must be had in the same tribunal. The *dictum* in *Matter of Leavitt* has ripened into a decision in the case at bar, for it has been thus far held that the appellant, a trustee appointed by the Supreme Court, may not have his accounts judicially settled by the Surrogate's Court.

It is to be observed in passing that the learned surrogate, who is nominally the respondent upon this appeal, is really an appellant, for he is before us with a very able brief contending for the existence of the power which he refused to exercise when he denied the appellant's petition for leave to account in the Surrogate's Court. These conflicting attitudes are fully justified, however, by the exigencies of the situation, and we refer to them simply for the purpose of emphasizing the fact that both of the parties to this appeal are asking us to reverse the order of the court below, and to hold that

Surrogates' Courts have power to judicially settle the accounts of testamentary trustees appointed by the Supreme Court. Another feature of the case is so peculiar as to warrant passing mention before we discuss the main question. The proceeding originated in an application for a peremptory writ of mandamus directed to a judicial officer, requiring him to take cognizance of a proceeding in his court. This form of the writ may only be issued, in the first instance, where the applicant establishes a clear right to the mandamus as a matter of law (Code Civ. Pro. § 2070), and it will never be issued against a court or judicial officer where there is a remedy by appeal from a decision which is attacked as being erroneous. In the case at bar the peremptory writ was properly invoked, for it was the appellant's only remedy. The denial of his *ex parte* application to the Surrogate's Court for leave to account gave him no right to appeal. If he is entitled, as matter of law, to account in that court, the only way in which he can enforce the right is by peremptory mandamus. Although the order of the Special Term, denying the application for the writ, is silent as to the grounds upon which it is based, the order of the Appellate Division has made it clear that the refusal to grant the writ was upon the law, and not in the exercise of discretion. The case is, therefore, properly before us on this appeal.

The question whether the Surrogates' Courts have jurisdiction to entertain proceedings for the judicial settlement of the accounts of testamentary trustees appointed by the Supreme Court is obviously one of considerable importance. It affects the rights of trustees and *cestuis que trust*, no less than the powers and duties of the Supreme Court and the several Surrogates' Courts of the State. The history of the courts which, under various names, have exercised jurisdiction in the administration and distribution of decedents' estates is exceedingly interesting, but much too long and involved for extended recital in a judicial opinion. We shall sketch in bare outline a few of the noteworthy features of its development, for the purpose of showing that although our probate

courts have always been tribunals of special and limited juris-
diction, they have so steadily grown in power and responsi-
bility, and their jurisdiction has been so constantly enlarged
and expanded that they are now courts of record and consti-
tute a very important part of our judicial system.

When the colony of New Amsterdam was settled by the
Dutch, all judicial power was vested in a council composed of
the director-general, the vice-director and schout fiscal.
Before this tribunal all matters pertaining to the succession
of estates were disposed of according to the Dutch Roman
law.   That court passed through various changes until the
English conquest of the province, when the Mayor's Court
was established, and for many years continued to entertain
jurisdiction in matters relating to decedents' estates.   It was,
however, a jurisdiction more ministerial than judicial, for the
judgment of the court in all important matters was trans-
mitted to the governor or secretary for official ratification.
In this way there developed a department known as the Pre-
rogative Office, which finally became known as the Preroga-
tive Court.   The distinguishing features of this jurisdiction
were that the granting of letters, the hearing of accounts, the
reckoning of administration and the granting of the final dis-
charge belonged to the governor, and not to any inferior
judge.   As the colony grew the Prerogative Court appointed
local delegates who represented the court for certain specified
purposes, and later these delegates assumed the title of sur-
rogates.   These local officers occupied a position analogous
to that of the local probate tribunals of England with relation
to the Ecclesiastical Courts of the realm, but their powers
were evidently much more limited because all their judicial
acts, such as taking proof of wills, had to be approved and
ratified under the seal of the Prerogative Court.   It requires
but little imagination to perceive that a system, so cumber-
some and unsystematic, would in time prove inadequate to
the necessities of a province whose rapidly-growing popula-
tion was spreading over an ever-enlarging territory and stead-
ily growing in wealth.   By degrees it was discovered that

the general jurisdiction exercised by the Court of Chancery furnished a much more effective and expeditious remedy than was to be found in the Prerogative Court, and accounts in the Court of Chancery increased until the common-law courts were but rarely resorted to. But this practice of accounting in equity overreached itself and in time demonstrated the necessity of establishing local tribunals with an independent jurisdiction in matters relating to the succession of estates. The Court of Probates, which in 1778 had succeeded the Prerogative Court, had been supplanted in 1823 by the Court of Chancery, but the latter court had been supplemented by the surrogates of the different counties, and these judicial officers were continued, with constantly increasing powers, until the adoption of the present Code of Civil Procedure by virtue of which they are now in the category of courts of record. To those who are interested in following in greater detail the development of probate jurisdiction in this state we commend the exhaustive historical opinion of Judge Charles P. Daly (first judge of the Court of Common Pleas, acting as surrogate of New York county), which was written in *Brick's Estate* in 1862 (15 Abb. Pr. 14), and to which we are indebted for many of the preceding observations.

Passing now to 1830, when the Revised Statutes took effect, we find that the specific powers thereby vested in the surrogates of the state were coupled with the restriction that "no surrogate shall under pretext of incidental power or constructive authority exercise any jurisdiction whatever, not expressly given by some statute of this state." This restriction gave rise to much difficulty which resulted in the repeal thereof in 1837. As was observed by Chancellor Walworth in *Pew* v. *Hastings* (1 Barb. Ch. 452), " it was afterwards found, however, that the exercise of certain incidental powers by courts was absolutely essential to the due administration of justice ; and that the revisers and the legislature had not, by their care and foresight, been able to take the case of these Surrogates' Courts out of the operation of the general rule." (p. 454.) From that time on the statutes gradually added acces-

sions to the jurisdiction of these courts until 1850, when the legislature enacted the first law conferring upon surrogates the power to take and settle the accounts of " any trustee created by any last will or testament, *or appointed by any competent authority* to execute any trust created by any such last will or testament." (Laws 1850, ch. 272.) Seventeen years later this was followed by another enactment giving surrogates power to compel testamentary trustees to render accounts of their proceedings in the same manner as executors, administrators or guardians appointed by such surrogates were then required to account. (Laws 1867, ch. 782, § 1.) By the Laws of 1871 (Ch. 482) surrogates were empowered to compel trustees to give security and to remove them. It is to be borne in mind that this legislation from 1850 to 1871 was enacted at a time when there was no power in any Surrogate's Court, except the Surrogate's Court of New York county (L. 1870, ch. 359), to appoint a successor to any testamentary trustee, and if it was not effective to confer upon surrogates the power to entertain and, in some instances, to compel accountings by the successors of testamentary trustees appointed by the Supreme Court, it was plainly futile and meaningless.

We now come to what may appropriately be termed the third and latest stage in the historical development of the jurisdiction of Surrogates' Courts. The Constitution of 1846, which remodeled the whole judicial organization of the state, recognized and continued the Surrogates' Courts of the state, but they were courts not of record and continued to be such until after the adoption of the Code of Civil Procedure in 1880. The commissioners who framed that Code left Surrogates' Courts in the category of courts not of record and it is manifest that their work was based upon that classification. But this Code, which was enacted in the precise form in which it was presented to the legislature, was afterwards amended by placing Surrogates' Courts in the list of courts of record. To this circumstance may be ascribed many of the incongruities in that part of our Code of Civil Procedure relating to Surrogates' Courts. The legislature simply placed these courts

in one class, without changing the phraseology which had been deemed appropriate in substance, while they were still in another class. Notwithstanding the fact that Surrogates' Courts are now courts of record, it is to be emphasized that they are still courts which possess no jurisdiction except such as has been specially conferred by statute, together with such incidental powers as may be requisite to enable them to effectually exercise the jurisdiction actually granted. The framers of our Code of Civil Procedure clearly recognized that fact. In order that the general and incomplete legislation which preceded the adoption of this Code might be made both more specific and comprehensive, it was all codified and amplified into what is now known as chapter 18, relating to Surrogates' Courts. Title 6 of that chapter, consisting of sections 2802 to 2820, inclusive, treats of testamentary trustees. The first section (2802) provides that " Any trustee created by any last will and testament, or appointed by any competent authority to execute any trust created by such last will and testament, may at any time file an intermediate account, and may also annually render and finally judicially settle his accounts before the surrogate of the county having jurisdiction." Here we note an almost verbatim repetition of the first statute (L. 1850, ch. 272) giving surrogates any power over testamentary trustees. Section 2807 of the Code provides for a compulsory accounting in three enumerated instances. In the case at bar we are concerned only with the third, which provides that a Surrogate's Court may compel a judicial settlement of the accounts of a testamentary trustee " where the trusts, or one or more distinct and separate trusts, created by the terms of the will, have been executed, or are ready to be executed ; so that the persons beneficially interested are, by the terms of the will, or by operation of law, entitled to receive any money or other personal property from the trustee." This last quoted provision does not apply to such a case as this, but the framers of this part of the Code, evidently intent upon leaving no room for doubt as to the powers of Surrogates' Courts in such cases, superadded section 2810,

which provides that "when one year has expired since the probate of the will, or when the trusts, or one or more distinct and separate trusts, created by the will, have been, or are ready to be, fully executed, a testamentary trustee may present to the Surrogate's Court a petition, duly verified, setting forth the facts, and praying that his account may be judicially settled," etc. The context of the whole chapter plainly indicates that while section 2802 seems to relate to annual or intermediate accountings, sections 2807 and 2810 are intended to apply only to final judicial settlements; and it is obvious that annual or intermediate accountings are appropriate to the period during which the trust continues, but utterly inappropriate to an accounting, either compelled or sought, after the trust period has expired, and the trustee is ready for his final discharge.

The learned justice who wrote for the Appellate Division laid stress in his opinion upon the difference between the phraseology of section 2802 as originally enacted and as it has remained since it was amended in 1885. (L. 1835, ch. 518.) As originally enacted the text related to "testamentary trustees." As it now stands it reads, "Any trustee created by any last will and testament." This change in description seems to have been thought so significant as to influence, if not control, the decisions below. But the argument in this behalf ignores the phrase which appears in both the original and the amended section 2802, "or appointed by any competent authority." Since the Supreme Court is concededly an authority competent to appoint a successor to a testamentary trustee, it is not apparent that the slight change in phraseology found in the amendment of 1885 affects the question one way or the other. Here, again, we find other language in the Code which dissipates any doubt as to the meaning of the designation "testamentary trustees," and the power of Surrogates' Courts over them. Section 2472, which defines the jurisdiction of surrogates, expressly confers the power (Subd. 3) "To direct and control the conduct, and settle the accounts, of executors, administrators, and testamentary trus-

tees; to remove testamentary trustees, *and to appoint a suc-cessor in place of a testamentary trustee so removed.*" By section 2514 the expression " testamentary trustee " is declared to include " every person, except an executor, an administrator with the will annexed, or a guardian, who is designated by a will, *or by any competent authority, to execute a trust created by a will;* and it includes such an executor or administrator, where he is acting in the execution of a trust created by the will, which is separable from his functions, as executor or administrator." We think that this definite language conclusively establishes the right and power of the Surrogates' Courts to entertain or compel proceedings for the judicial settlement of the accounts of trustees appointed by the Supreme Court as successors to testamentary trustees, unless there is other legislation which clearly expresses a contrary intent.

The learned Appellate Division has intimated that such hostile legislation is to be found in section 20 of the Personal Property Law and section 111 of the Real Property Law. Section 111 of the Real Property Law is in effect a re-enactment of the Revised Statutes (§ 68, vol. 1, p. 730), which provided that " upon the death of the surviving trustee of an express trust, the trust shall not descend to his heirs, nor pass to his personal representatives; but the trust, if then unexecuted, shall vest in the Court of Chancery, with all the powers and duties of the original trustee, and shall be executed by some person appointed for that purpose, under the direction of the court." That statute related, of course, only to trusts of real property. In 1882 (Ch. 185) the legislature enacted the same provision as to trusts of personal property. Up to that time the common-law rule had prevailed, under which the death of a testamentary trustee of personal property devolved the trust, so far as unexecuted, upon the personal representatives or next of kin of the deceased trustee. (*Wetmore* v. *Wetmore,* 44 App. Div. 52; *Boone* v. *Citizens' Sav. Bank,* 84 N. Y. 83, 87.) The statute of 1882, with some amplification, was carried into the Personal Property Law of

1897, which, as amended by chapter 150, Laws of 1902, now reads as follows: "On the death of a last surviving or sole surviving trustee of an express trust, the trust estate does not pass to his next of kin or personal representative, but, if the trust be unexecuted, in the absence of a contrary direction on the part of the person creating the same, it vests in the Supreme Court and shall be executed by some person appointed by the court, whom the court may invest with all or any of the powers and duties of the original trustee or trustees. The beneficiary or beneficiaries of the trust shall have such notice as the court may direct of the application for the appointment of such person; and the person so appointed shall give such security as the court may require, and shall be subject to the same requirement of law as to accounting and as to the administration of the trust as apply to testamentary trustees; and shall be entitled to such compensation for his services by way of commissions *as the court appointing him shall determine*, which shall in no case exceed that now allowed by law to executors and administrators, besides his just and reasonable expenses in the matter in which he is appointed." (Cons. Laws, ch. 41, section 20.) In 1896 the provisions of the Revised Statutes relating to trusts of real property had been carried into the Real Property Law, and amended in 1902 (Ch. 151) with the same phraseology regarding compensation.

It is said that these provisions of the Real Property Law and the Personal Property Law have invested the Supreme Court with exclusive jurisdiction to appoint substitutes or successors for deceased testamentary trustees; and this view is sought to be fortified by the provision that the substituted trustees shall be entitled to such compensation "as the court appointing him shall determine." The argument then proceeds to the conclusion that it would be incongruous to give the Surrogate's Court the power to compel or entertain proceedings for an accounting under such a trust, while the Supreme Court alone has the power to appoint such a trustee and to fix his compensation. The answers to these contentions are obvious. The Real Property Law and the Personal

Property Law (§§ 111 and 20) confer no new jurisdiction upon the Supreme Court, and the sections of the Code of Civil Procedure (§§ 2802–2820) take nothing from it. The Supreme Court, as the successor of the Court of Chancery, has always had, and still has, jurisdiction over all classes of trusts. The question is not whether that jurisdiction exists, but whether it is exclusive. Unquestionably it is exclusive in so far as it involves the exercise of equitable powers or duties which have not been given to Surrogates' Courts. The Constitution has perpetuated the ancient equity powers of the Court of Chancery in and through the Supreme Court, but it has also given to the legislature the right to invest Surrogates' Courts with such jurisdiction as may be deemed wise or expedient (Art. 6, § 15). The powers thus delegated to the Surrogates' Courts do not deprive the Supreme Court of any jurisdiction it has ever had. They are simply additions to or enlargements of the jurisdiction of the Surrogates' Courts. There are many trusts which, owing to their peculiar nature, can only be administered under the direction of a court of equity, and these are necessarily within the exclusive control of the Supreme Court. There are many more, however, as to which it may or may not assume jurisdiction. Although it has the power to direct the administration of all trusts, it need not exercise it if the legislature has given to other tribunals the requisite jurisdiction. That is precisely the condition presented by the case at bar. The Supreme Court, in the exercise of its undoubted power, appointed a successor to a deceased testamentary trustee. When that substituted trustee had completed the work for which he was appointed, he found that there were two methods by which he could account and obtain his discharge. One was in the court of original jurisdiction, the Supreme Court, which had appointed him, where the procedure was in the form of an action involving much cumbersome and expensive practice. The other was in the Surrogate's Court, to which the legislature had delegated many powers which had formerly inhered solely in the Supreme Court, and in the

Surrogate's Court the trustee was authorized to proceed upon a simple petition asking for the issuance of citations to those who were interested in the distribution of the corpus of the trust fund.   In choosing this simpler and more expeditious method of accounting, the trustee exercised a right that always exists when two or more tribunals are given jurisdiction of the same subject-matter.   Such concurrent jurisdiction is neither rare nor anomalous.   Wherever it exists there is always the practically negligible possibility of a conflict of authority, but experience has demonstrated that such difficulties are more often imaginary than real, and when they do arise they can easily be adjusted.   The Supreme Court, in a proper case and in the exercise of its undoubted power, can interpose by stay of proceedings or otherwise when necessary. The case of *Leavitt* (*supra*) affords an excellent illustration of conditions under which the Supreme Court. might well assume to continue the control of a trust as to which it had already exercised jurisdiction.   In that case there were several trustees, some of whom had been appointed by that court and one or more of whom had died. ` The question whether it was proper or necessary to appoint a successor to a deceased trustee was, under those circumstances, very correctly addressed to the court which, from the beginning, had controlled the trust.   The case at bar is an equally cogent example of another class of trusts as to which the power of either court is ample in all proceedings for a final accounting.   The Supreme Court can, in the exercise of its original jurisdiction, assume to control the proceeding, but that power is permissive rather than compulsory, so long as there is another tribunal which also has the right to act in the same matter.

It must be admitted that the interpolation into section 111 of the Real Property Law, and section 20 of the Personal Property Law, of the sentence relating to the compensation of trustees is unfortunate and confusing.   It may have been framed upon the theory that trustees would always account in the court which appointed them, and that, therefore, no other court would be called upon to fix their compensation.

But that theory is manifestly untenable unless we utterly disregard the whole of title 6 of chapter 18 of the Code of Civil Procedure, in which, as we have seen, the legislature has declared in most explicit language that a testamentary trustee or his successor may account in the Surrogate's Court. The probability is that the framers of the statutes of 1902, relating to real and personal property, had no thought of the provisions of the Code of Civil Procedure defining the jurisdiction and practice in Surrogates' Courts, when they put into the real and personal property statutes the provision as to the compensation of trustees. Such lapses are neither new nor unusual. So long as human memory is frail and legislation is prolific there will always be some lack of co-ordination between statutes which are more or less related to each other. The courts can do no more in such cases than to call the attention of the legislature to the necessity for the cure.

We venture to suggest that section 111 of the Real Property Law and section 20 of the Personal Property Law should be amended so as to provide that a trustee's compensation may be fixed by any court which has power to pass upon his final account, and when that is done there will be no conflict or inconsistency between those statutes and the sections of the Code relating to Surrogates' Courts and their powers. Whatever may be the outcome of this suggestion, we are convinced that this obvious inconsistency in these statutes is not a sufficient ground for denying to the Surrogates' Courts a jurisdiction clearly and explicitly conferred by the legislature. It is not to be supposed that the lawmaking power, under the cover of an obscure provision in one statute relating to compensation of trustees, intended to nullify other statutes containing a number of express provisions plainly conferring well-defined jurisdiction upon Surrogates' Courts.

There are several reported cases decided in the Supreme Court, but not cited upon either of the briefs submitted to us, in which it was held that upon the death of a last surviving trustee of a trust that remains unexecuted, the trust, by virtue of the express terms of the statute, devolves upon the

court, which is thereupon authorized to appoint a person to execute the trust, but that no power exists to appoint a new trustee. (*Brater* v. *Hopper*, 77 Hun, 244; *Faile* v. *Crawford*, 30 App. Div. 536; *Wildey* v. *Robinson*, 85 Hun, 362; *Jewett* v. *Schmidt*, 83 App. Div. 276, and *Matter of Gueutal*, 97 App. Div. 530.) The theory upon which these cases were decided is clearly stated by the late Mr. Justice PATTERSON in *Matter of Gueutal*, as follows: " There is no authority in section 91 of the Real Property Law  *  *  *  for appointing a ' substituted trustee ' by that name. In such a case as this, the trust, if any, has devolved upon the court, and it has power to appoint some one as its hand and representative to execute the unexecuted parts of a trust, with all the powers and duties of the original trustee, but under the direction of the court." (p. 531.) It seems to us that these cases place too much emphasis upon mere nomenclature as indicating a distinction between persons appointed to execute trusts which have devolved upon the court, and persons appointed by last will and testament. There is, of course, a technical distinction but no real difference. The duties of such a person appointed by the court are the same whether he is called " the right hand of the court," or is referred to as a " substituted trustee ; " and that seems to have been the view entertained by this court in *Matter of Carpenter* (131 N. Y. 86) where a person appointed to succeed a sole surviving trustee of an unexecuted trust was denominated " a new trustee." However that may be, the fact remains that none of these cases deal with the essential point in the case at bar, which is, that any trustee, whether appointed by a last will and testament, *or by any other competent authority*, is now authorized by express legislative enactment to render his accounts to the proper Surrogate's Court.

The orders of the Appellate Division and the Special Term should be reversed and the application for the writ granted, without costs to either party.

CULLEN, Ch. J., VANN, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Orders reversed, etc.