In the Matter of the Application of CHARLES F. MACLEAN for Letters Testamentary in the Estate of SAMUEL J. TILDEN, Deceased.

Surrogate's Court, Westchester County, June, 1922.

Wills — provision that surviving executors and trustees may appoint successors in case of vacancy — trustee appointed by Supreme Court cannot act as executor — proof of designation of executor by sole surviving executor — limited powers of successor trustee and executor after death of all original executors, to fill vacancies.

Upon the probate of the will of Governor Samuel J. Tilden, letters testamentary were issued to George W. Smith, John H. Bigelow and Andrew H. Green, the persons originally named as executors. The 6th clause of the will provided: "In case of the death, resignation or incapacity of either of my said executors and trustees, the survivors of them shall immediately appoint a successor by an instrument in writing under their hands and seals and upon such appointment being made the person so appointed shall thereupon become and be invested with all the rights, power and authorities conferred by an executor and trustee hereby appointed." And the 8th clause, while directing said executors to constitute for specific persons certain trusts to be held distinct and separate from the general trust created by the will, declared that the executors should be trustees of said special trusts, with power to manage the same, collect the income thereof, apply the same as by the will directed, to sell in their discretion the trust securities, and to invest the proceeds thereof. Upon the death of Mr. Green the surviving trustees, acting under the said 6th clause of the will, appointed a Mr. Randolph as successor executor, and his appointment having been duly authenticated by the surrogate, letters testamentary were issued to him. Upon the death of Mr. Bigelow the survivors were unable to agree, and upon application the Supreme Court appointed Charles F. MacLean as third trustee, but no appointment of a third executor was made, so that, at the date of that appointment, the special trusts were being administered by Mr. Randolph, Mr. Smith and Mr. MacLean, and the executorial duties were being performed by Mr. Smith and Mr. Randolph. *Held*, that whatever may have been the intent of the testator, yet by successive adjudications of the Supreme Court in three different actions resulting in judicial settlement of the accounts of the executors and of the trustees of the special trusts the intent of continuous identity of the persons who were executors to be the trustees of the trusts under the will had been interrupted and put an end to, so that just before the death of Mr.

Smith, Mr. Randolph having resigned and thereafter died, he, Mr. Smith, was the sole surviving executor.

Upon an application by Mr. MacLean for letters testamentary by virtue of his designation by an instrument in writing purporting to have been executed by Mr. Smith as sole surviving executor on February 18, 1919, pursuant to the authority contained in the 6th clause of the will, it appeared that although diligent search had been made for the original paper it could not be found. *Held*, that a copy thereof having been duly proved was effectual and that by virtue thereof Mr. MacLean became vested with the authority and powers of an executor under the will, and said copy will be deemed filed *nunc pro tunc* as of the date of the execution of the original, and letters testamentary may issue to Mr. MacLean, the sole surviving executor.

Under the decree to be entered upon the present application said sole surviving executor will have no power to appoint successor executors who will have power as trustees save only in the special trusts of which he is now sole trustee, and in which the power to appoint a successor has not been taken up by either the Supreme Court or Surrogate's Court, and remains undivested in the sole administering trustee but not in him as executor.

There being no identity of the personnel of the executorship, or of any of the special trusts, the words " my executors and trustees " were merely intended by the testator as *descriptio personæ*.

APPLICATION for letters testamentary.

*E. Emmet Digney* (*Henry W. Jessup*, of counsel), for petitioner.

*Beekman, Menken & Griscom*, for respondent William Ordway Partridge.

*Strong & Mellen* (*W. J. Killea*, of counsel), for respondent Susan T. Tobin.

*David O. Decker*, for executors of Ruby T. Paine.

SLATER, S. This is an application for letters testamentary to issue to Charles F. MacLean, who claims the right to such letters by virtue of his designation by an instrument in writing, purporting to have been executed by George W. Smith, as sole surviving executor on the 18th day of February, 1919, pursuant to his authority contained in the 6th clause of decedent's will, which reads as follows: " In case of the death, resignation or incapacity of either of my said executors and trustees, the survivors of them shall immediately appoint a successor by an instrument in writing under their hands and seals and upon such appointment being made the person so appointed shall thereupon become and be invested with all the rights, power and authorities conferred by an executor and trustee hereby appointed."

The answer of Charles H. Strong asks the court to construe the 6th and 8th clauses of the will. The 8th clause of the will, relating to powers of executors and trustees, is as follows: " My said Executors and Trustees are directed to constitute the Trusts for specific persons hereinafter more particularly described and defined.

My said Executors and Trustees shall be trustees of the Special Trusts by them so constituted; but the said Trusts shall be distinct and separate from the general Trust under this instrument.   In their capacity of trustees of trusts for specific persons, they shall have power to manage the several Trusts; to collect the income thereof, and to apply the same as herein directed; to sell in their discretion the securities and to invest the proceeds thereof."

The will of Governor Tilden was originally proved in this court and letters testamentary issued on the 20th day of October, 1886, to George W. Smith, John H. Bigelow and Andrew H. Green, the persons originally named as executors in said will.   They qualified as such, later the several trusts were set up and they acted as trustees of the various trusts created by the will.

They were defendants in the action brought to set aside the so-called " library trust " in said will, which successfully impugned the validity of the testator's main provision.   *Tilden* v. *Green*, 130 N. Y. 29.

Thereafter an agreement was made between the respresentatives of the estate and the Tilden trust and the heirs of Samuel Jones Tilden, which resulted in effectuating in part the testator's desire. The result is the Tilden donation, forming part of the New York Public Library.   There was also an accounting, the executors' account being judicially settled, as well as that of the trusts created under the will.

Upon the death of Andrew H. Green, acting under this 6th clause of the will, the survivors appointed Lewis V. F. Randolph as successor executor and this appointment was authenticated by the surrogate of this county, who issued letters testamentary to him on July 23, 1904.

John H. Bigelow died on or about the 1st day of December, 1911, and the survivors, Mr. Randolph and Mr. Smith, were unable to agree upon a successor.   Mr. Smith made an application in the Supreme Court of New York county to appoint a third trustee and break the deadlock.   His application was granted, and the result was that former Justice Charles F. MacLean was named as third trustee.   No appointment was made of a third executor so that at the date of that appointment the special trusts were being administered by Randolph, Smith and MacLean, and the executorial duties were being performed by Smith and Randolph.

It was proved before me that as early as 1910, in a litigation to which all the persons interested in the estate were joined, and John H. Bigleow, George W. Smith and Lewis V. F. Randolph were plaintiffs, in the Supreme Court of New York county, the executorial and special trust duties had been differentiated, and

crystallized by judicial settlement of the separate accounts of the executors and of the trustees of the different special trusts.

The report of the referee, Hamilton Odell, appointed to hear and determine, shows that the executorial duties had been fully performed, except as to a " collateral inheritance tax fund," a so-called " contingent fund," and the publication of speeches, public documents and such other writings and papers of the decedent as the executors were authorized to collect and publish under the 42d clause of the will. This power also included the power to burn and destroy such as were not preserved for publication. The " collateral inheritance tax fund " was settled and the balance distributed. The contingent fund was reduced to the amount which the executors deemed necessary to obtain the carrying out of their remaining duties respecting the monument and publication of papers under the 41st and 42d clauses of the will and the special trusts were set apart and were thus, after the appointment of Justice MacLean, being separately administered by these three trustees, and the two executors were still in possession of the " contingent fund " and of the balance of the books and papers not yet published.

As if a fatality pursued this estate, the joint administration of Randolph, MacLean and Smith was not co-operative and felicitous. Several litigations resulted. One, an action entitled *Susan T. Sabin*, Plaintiff, v. *Smith, Randolph and MacLean*, as trustees of the two trusts created by the 19th and 20th articles of the will, resulted in a final order dated the 25th day of June, 1917, and resettled the 31st day of October, 1917, made by Mr. Justice Finch, directing an accounting of these trusts, and upon the settlement of their accounts that the resignation of Lewis V. F. Randolph having been presented, Charles H. Strong should be appointed as trustee in place of Randolph of those two trusts to take effect on the settlement of their accounts as trustees thereof.

There was offered in evidence the consent to the entry of a similar order in the action of Anna J. Gould, brought coincidently, so that as a result of the actions of Gould and of Sabin against the trustees, Randolph resigned and Charles H. Strong was appointed and is now acting as trustee of the Ruby Paine trust, of the Gould trust and of the Sabin trust.

Thereupon, the accounts above referred to having been sent to the Hon. Henry A. Gildersleeve, referee, to hear and determine, another action which was pending, to which Lewis V. F. Randolph, George W. Smith and all the beneficiaries under the will, as well as the comptroller of the state of New York were parties, was similarly referred. See judgment signed by Justice

Misc. 729]      Surrogate's Court, Westchester County, June, 1922.

Finch on the 30th day of April, 1919.   And as a result the trustees under the will had their accounts as trustees settled down to December 31, 1917, the date of the resignation of Randolph, and Randolph and Smith accounted down to said date.   These accounts were judicially settled.   There was a summary statement of each of the special trusts being administered by those three and of the executors' account, administered by Randolph and Smith.   The judgment recited the resignation of Randolph as executor and his relinquishment to George W. Smith as the surviving executor of all the property of the estate of Tilden in his possession, or under his control.   The judgment provided for certain payments and distributions in each of the trusts and out of the contingent fund in the hands of the executors which was stated to be as of that date (December 31, 1917) $48,182.34.   Among the payments was a payment on account of the Tilden monument of $3,000 to William Ordway Partridge.

It is to be noted at this point that in respect to the Hazard trust, the subsequent death of Randolph and of Smith, and the fact that the appointment of Charles H. Strong did not relate to that trust, left the petitioner, Charles F. MacLean, sole trustee of that special trust, and that the death of Smith created a vacancy in the other special trusts which was filled by this court by the appointment of Hon. Isaac H. Mills.   In respect to the executorship, upon the going into effect of the judgment aforesaid on the 30th day of April, 1919, George W. Smith remained the sole surviving executor.

We are not concerned in any way with the administration of the special trusts except to show that there has been a segregation under the will which, with the exception of its reference to the "trustees of these special trusts," uses the term "executors and trustees" in every reference to trust and executorial duties through the will, which might have led to the contention that it was the testator's intent that those at all times who were executors should be trustees, and those should be trustees who were executors.

In order to avoid any future complication in this case I was asked to construe paragraphs 6 and 8.   I am inclined to hold and do hold that whatever may have been the intent of the testator, yet by successive adjudications in the Supreme Court in three different actions resulting in judicial settlements of the accounts of the executors and of the trustees of the special trusts, this intent of continuous identity of the persons who were executors to be the trustees of the trusts under the will has been interrupted and put an end to, so that just before the death of Mr. Smith he was the sole surviving executor.   He and Justice MacLean were the two trustees of the Hazard trust.   He and Justice MacLean

and Mr. Strong were the three trustees of the Sabin, Paine and Gould trusts. There was no identity of the personnel of the executorship, or of any of these special trusts, and I hold further that the words " my executors and trustees," referring to the persons named in the 2d clause of the will, and running through the will, were merely intended by the testator as words *descriptio personæ.*

To this proceeding before me are joined all the persons possibly or contingently interested in the only fund in the hands of the executor Smith at the time when he made this appointment sought to be established before me and to be authenticated by letters testamentary, the so-called " contingent fund."

This " contingent fund," set apart upon the completion of the second action above referred to, was deemed sufficient to pay the administration expenses, including the commissions of the executors, and to pay for the erection of the monument in the city of New York. At the time of his death Mr. Smith had been engaged upon this particular matter with intense devotion and with little substantial success, until he had secured a statue designed by William Ordway Partridge, the sculptor, and then commenced his efforts to secure the acceptance of the statue by the municipal art commission of the city of New York, and the still more difficult task of securing a site at which, if accepted by the art commission, the statue could be placed.

Mr. Randolph having resigned as aforesaid, and having thereafter died, Mr. Smith was the sole surviving executor, and he made, under his hand and seal, an instrument in writing, reading as follows:

" WHEREAS Lewis V. F. Randolph as one of the Executors of the Will of Samuel J. Tilden, deceased, has resigned as such Executor, and

" WHEREAS, the method for the appointment of an Executor in the place and stead of said Lewis V. F. Randolph as such Executor is provided by the Sixth Article of the Will of Samuel J. Tilden, deceased, as follows:

" ' In case of the death, resignation or incapacity of either of my said Executors and Trustees, the survivors of them shall immediately appoint a successor by an instrument in writing under their hands and seals; and upon such appointment being made, the person so appointed shall thereupon become and be invested with all the powers, rights and authorities conferred upon an Executor and Trustee hereby appointed.'

" I, George W. Smith as the surviving Executor of the said Will of Samuel J. Tilden, deceased, do hereby appoint and designate

Misc. 729]     Surrogate's Court, Westchester County, June, 1922.

Charles F. MacLean Esquire of the City, County and State of New York as a successor Executor of said Will in the place and stead of the said Lewis V. F. Randolph.

" *In Witness Whereof* I have hereunto set my hand and seal this eighteenth day of February One Thousand Nine hundred and Nineteen.

" In Presence of                                         GEO. W. SMITH [SEAL]
          " EMMA A. F. SMITH."

This was witnessed by Mrs. Smith, and, as appears by the testimony before me, Mr. and Mrs. Smith called upon Justice MacLean and delivered the original instrument to him. A copy was sent to Mr. Cahill, who had, upon the appointment of Mr. Randolph as trustee, become the clerk and bookkeeper of the Tilden estate, and who had copies of all the papers in his office. This copy, delivered that day, in the handwriting of Mr. Smith, to Mr. Cahill, is the one produced before me and filed in the Surrogate's Court, and proved as a copy of the original. The original, it is testified, was taken to the New York Life Insurance and Trust Company, where the executor account was on deposit as distinct from the special trust accounts. It was exhibited to the appropriate officers in the trust company, Mr. Parrish and someone else, and Justice MacLean's signature as executor was registered; and it appears that checks signed by Smith and MacLean were honored by the bank subsequently. This original paper has been lost. Although diligent search has been made for it, it cannot be found.

It is contended on behalf of the petitioner, and I think properly, that the surrogate has power to take proof of this instrument as of a lost instrument in the exercise of his powers under section 20 of the new Surrogates' Court Act. Subdivision 11 thereof provides that, " With respect to any matter not expressly provided for in the foregoing subdivisions " the surrogate has power " to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court having by the common law jurisdiction of such matters, as otherwise prescribed by statute," as well as under section 40 of the Surrogates' Court Act, which is the section conferring jurisdiction and powers. In a court of common law where the writing containing or constituting the primary evidence of the fact to be proved is satisfactorily shown to be lost or destroyed, without the fault of the party desiring to prove the fact, secondary evidence becomes admissible. See New York cases cited at page 1024, § 1315 (E) Corpus Juris, vol. 22.

Now this particular form of appointment of executor is not

prescribed by statute, as to the manner in which it shall be done, nor as to the manner in which it shall be effectuated. The cases in actual practice are more concerned, as far as I have been able to ascertain, with the designation of a successor trustee, or a new trustee. *Matter of Runk*, 200 N. Y. 447. The provisions of the Surrogates' Court Act appear to relate to only two classes of executor to receive letters testamentary — the first, where the executors were designated in the will itself, and were deemed to renounce by statutory provision covering the case in case they did not qualify within a given time after the probate of the will. The second class was of persons named as original executors by some one given that power by the will which itself named no executor. *Hartnett* v. *Wandell*, 60 N. Y. 346. These also required to be appointed and to qualify within a given time (Surrogates' Court Act, § 157), but no provision can be found in statute covering the time within which, or the manner in which the designation of a successor executor, as contemplated in the 6th clause of this original will, must be exercised or effectuated.

Therefore, section 20, subdivision 11, and section 40 of the Surrogates' Court Act seem to me to be applicable, and as subdivision 6 of section 20 gives me the right to enter as of a former time the decree, or order of my court, and as it is satisfactorily proved before me that the only respect in which at the time it was necessary that the acts of Justice MacLean as executor should be recognized and acted upon related to his signature of checks in the New York Life Insurance and Trust Company account, which company had notice and knowledge of his appointment, and in his negotiations with Mr. Smith and the sculptor relating to the completion and erection of the monument upon an appropriate site, I shall hold that the designation of Justice MacLean by a lost paper writing, of which a copy has been duly proved before me, executed by Mr. Smith, witnessed by Mrs. Smith, delivered to Justice MacLean on or about the 18th day of February, 1919, was effectual, and that, by virtue of such written appointment made within the intent of clause 6 of the will by George W. Smith as sole surviving executor, Charles F. MacLean became vested with the authorities and powers of an executor under the will, and that said copy shall be deemed filed *nunc pro tunc* as of the 18th day of February, 1919, and that letters testamentary may now issue from this court to Charles F. MacLean, the sole surviving executor.

But I shall hold, answering the appeal to my power to construe this will, that the power to appoint successor trustees, given by the 6th clause of the will, and vested in " my executors and

trustees," by said clause has been abdicated by the deadlock between the surviving trustees Randolph and Smith. Thereupon it was exercised *first*, by the Supreme Court in New York county, which in the appointment of Justice MacLean to succeed John H. Bigelow, and in the appointment of Charles H. Strong to succeed Lewis V. F. Randolph, has taken up into the judicial power of the state this power; and, *second,* this court also asserted its concurrent power to appoint a successor, which it exercised upon the death of Mr. Smith by appointing the Hon. Isaac H. Mills as the third trustee of the specific trusts involved in the proceeding then before this court, *i. e.,* the Sabin and Gould trusts. When letters testamentary issue to Charles F. MacLean under the decree to be made in this proceeding, he will have no power to appoint successor executors, who will have power as trustees, save only in the Hazard trust, of which he is now the sole trustee, and in which the power to appoint a successor has not been taken up by the Supreme Court, or the Surrogate's Court, and remains undivested in the sole administering trustee, but not in him as executor.

And I further hold that by virtue of the provisions of the will itself, clause 5 thereof, no bond need be required in the premises of said Charles F. MacLean.

Submit decree accordingly. Letters testamentary will issue as directed.

Decreed accordingly.