In the Matter of the Final Judicial Settlement of the Accounts of WILLIAM P. HALE, as the Sole Surviving Executor, etc., of JUSTUS MILLER, Deceased.

JAMES S. MILLER and Others, Appellants; WILLIAM P. HALE, Executor, etc., of JUSTUS MILLER, Deceased, Respondent.

Third Department, February 18, 1931.

*William C. Gordon*, for the appellants Herbert Baucus and others.

*James Farrell*, for the appellants James S. Miller and another.

*Charles Grosberg*, special guardian, for Donald O. Baucus, minor.

*Herbert D. Hamm* [*Louis J. Rezzemini* of counsel], for the respondent.

HILL, J. This is an appeal from a decree of the Rensselaer County Surrogate's Court, settling the accounts of William P. Hale as sole surviving testamentary trustee of the estate of Justus Miller, deceased. Objection is made that the Surrogate's Court was without jurisdiction for the reason that the trust, by its terms, ended at the time of the death of Frank B. Miller, the *cestui que trust*, and that thereafter the accounts and proceedings of the then surviving trustees were finally settled after a hearing before a referee, by a judgment in the Supreme Court, dated November 15, 1919, entered in an action brought for that purpose. The decree appealed from allows commissions, expenses, sums paid for taxes and the like after the date of the Supreme Court judgment. The legality of these payments and allowances is attacked. The appellants assert that as the trust terminated at the death of Frank B. Miller, the trustees' power was limited to an immediate distribution following and in compliance with the Supreme Court judgment, and *a priori* that the handling of the property of the estate by those who had been trustees was either wrongful or as agents for the tenants in common of the realty and personalty. That compensation for these services by way of statutory commissions could not be made by the surrogate, nor the payment of income taxes and expenses of management of the estate approved. The respondents seek to sustain the decree upon the theory that the Supreme Court judgment was an intermediate settlement of their accounts; that of necessity and with the consent of all parties, the testamentary trusteeship was continued, and that now facility and expedition require that the final accounting be made in the Surrogate's Court. A determination involves the concurrent jurisdiction of the Supreme Court and the Surrogate's Court as to testamentary trusts and trustees, and whether the Supreme Court, prior to the decree appealed from, obtained exclusive jurisdiction. A statement of the facts with considerable detail seems necessary.

Justus Miller died in 1897 a resident of Troy. His will with a codicil was probated in the Surrogate's Court of Rensselaer county in the same year. The residuary estate was bequeathed and devised in trust to four trustees, the trust to continue until

the death of testator's son, Frank B. Miller. If this occurred during the lifetime of testator's widow, Elizabeth Miller, the property held in trust was given one-half to the widow and one-half equally to nine nephews and nieces. (The 4th subdivision of the will names ten, but one, John Miller, died prior to the testator and the codicil revoked the legacy to him.) The will directed that one-half be distributed equally among such nephews and nieces " as shall be living at the death of my said son, Frank B. Miller, share and share alike," but the named nephews and nieces living at the death of the testator, in writing agreed, that if any of their number should die prior to the death of said Frank B. Miller, the share of the one so dying should be given " to the husband or widow and child or children of such a one who would have taken had he or she been alive  *  *  *." The life tenant, Frank B. Miller, died on April 9, 1919. At that time three of the trustees were still living, including the widow, Elizabeth Miller, also five of the nephews and nieces. Each of the four that had died left a surviving spouse and one or more children. The Supreme Court judgment determined that the trustees had in their hands $370,231.17 subject to allowances and commissions, and this sum included about $4,000 of income which belonged to the remainder-men other than Elizabeth Miller, and which was to be distributed among them. After the payment of commissions and the like, there remained $349,187 of corpus. About $300,000 was invested in mortgages, $36,000 in real estate carried as personalty as it had been bought in on foreclosures, $4,000 in Liberty bonds, furniture and a small balance in cash. In addition to this, there were twenty-five or more separate parcels of real estate which had been owned by the decedent, and retained as a part of the trust fund. The judgment contained the following provisions: " And it further appearing that there are a large number of parcels of real estate in the trust property in the hands of said plaintiffs as such trustees and that the distributees thereof are willing that the said real estate, instead of being sold and converted into cash without delay, remain under the control and management of said plaintiffs for an indefinite period, it is further

" Ordered, Adjudged and Decreed that the said plaintiffs retain the control and the management of all of the real estate comprised within the trust estate until the further order of the Court in the premises, and it is further

' Ordered, Adjudged and Decreed that the accounts of the plaintiffs be and the same are hereby judicially settled and allowed up to and including the 24th day of July, 1919, as filed and adjusted, and that the plaintiffs upon filing in this Court receipts for the

several sums hereby decreed to be paid and for the distributive shares hereby awarded to the defendants herein, be and they are hereby and each of them is discharged from any further liability for all their acts, doings and omissions and commissions as surviving trustees under the Last Will and Testament of Justus Miller, late of the City of Troy, deceased, for the period ending July 24, 1919, and that they account hereafter whenever required for the principal of the fund remaining in their hands.''

In 1928 William P. Hale, the then sole surviving trustee, presented his petition to the Surrogate's Court of Rensselaer county asking for the final settlement of his accounts as trustee, and for the final distribution of the trust estate. A decree settling his accounts and distributing the estate was entered after the usual proceedings. It is from that decree that this appeal is taken. The account filed in Surrogate's Court charges the trustee with the balance found by the Supreme Court judgment of 1919, and shows payments for the general conduct of the business of the estate, commissions and the like, and also nearly $400,000 of principal and income to the owners of the fund. Prior to the time of this accounting, two of the trustees, Elizabeth Miller and Edward J. Miller, had died, leaving only one survivor. Two nephews and one niece had died after the judgment of 1919, leaving only two nieces surviving, all of the deceased nephews and nieces sharing by representation. This appeal is taken by the residuary legatees under the will of the widow Elizabeth Miller, who was the owner of one-half of the trust fund.

The contention of the appellants that the trustees were without power to act following the death of the life beneficiary and the Supreme Court judgment of 1919 cannot be sustained. '' Regardless of whether or not title to the trust fund remained in the trustees after the death of the life beneficiary, the fund itself was still in their possession as trustees, and they were still required to exercise their power and perform their duty as trustees to divide the trust fund and to pay it over to those entitled thereto, before the administration of their trust was complete.'' (*Matter of Thomas*, 254 N. Y. 292, 296.) The personal estate consisted largely of real estate mortgages. Prudent realization upon these required a long period of time. The conduct of the remaindermen indicates at least acquiescence and consent that the trustees should continue to act in their official capacity. The testatrix of these appellants was one of the trustees and acted until her death in 1922, and payments were made to her executor during the five years that elapsed between her death and the accounting in Surrogate's Court.

The trustees, upon the probate of the will, qualified in the Surrogate's Court and received letters of trusteeship authorizing them to act. However, they went to the Supreme Court for their first judicial accounting, and under the conditions which exist in this estate, we believe that appellants have no grounds to complain because now they seek to return to the court of original jurisdiction for the final judicial accounting. " The Supreme Court, as the successor of the Court of Chancery, has always had, and still has, jurisdiction over all classes of trusts " (*Matter of Runk*, 200 N. Y. 447, 460), and concurrent powers, so far as testamentary trusts are concerned, which have been given to the Surrogate's Court do not deprive the Supreme Court of any of its jurisdiction.

" The Supreme Court, in the exercise of its undoubted power, appointed a successor to a deceased testamentary trustee. When that substituted trustee had completed the work for which he was appointed, he found that there were two methods by which he could account and obtain his discharge. One was in the court of original jurisdiction, the Supreme Court, which had appointed him, where the procedure was in the form of an action involving much cumbersome and expensive practice. The other was in the Surrogate's Court, to which the Legislature had delegated many powers which had formerly inhered solely in the Supreme Court, and in the Surrogate's Court the trustee was authorized to proceed upon a simple petition asking for the issuance of citations to those who were interested in the distribution of the corpus of the trust fund. In choosing this simpler and more expeditious method of accounting, the trustee exercised a right that always exists when two or more tribunals are given jurisdiction of the same subject-matter. Such concurrent jurisdiction is neither rare nor anomalous. Wherever it exists there is always the practically negligible possibility of a conflict of authority, but experience has demonstrated that such difficulties are more often imaginary than real, and when they do arise they can easily be adjusted. The Supreme Court, in a proper case and in the exercise of its undoubted power, can interpose by stay of proceedings or otherwise when necessary." (*Matter of Runk, supra*, 460, 461.)

" That court [the Supreme Court] under ordinary circumstances will refuse to entertain jurisdiction of an action seeking relief which can be fully administered on an accounting, for instance, in Surrogate's Court. But the question whether it will thus refuse to entertain jurisdiction is one which largely rests in its discretion, and, therefore, should be addressed to it certainly in the first instance." (*Lawrence* v. *Littlefield*, 215 N. Y. 561, 584.)

The Supreme Court in its discretion refused to entertain juris-

diction in this matter. (*Miller* v. *Peck*, 226 App. Div. 713.) The accounting in the Surrogate's Court which is questioned did not involve the subject-matter adjudicated in the earlier Supreme Court judgment. That judgment was intermediate and settled the accounts only to the date stated therein. The Surrogate's Court has considered the receipts and disbursements and the conduct of the trustees thereafter. In *Matter of Ayrault* (81 Hun, 107; affd., 146 N. Y. 389) it was held that the jurisdiction of the Supreme Court was exclusive, and an accounting in the Surrogate's Court was restrained. There, however, a review and a determination was sought concerning the same subject-matter which the Supreme Court had already passed upon.

Since 1919 two of the trustees and four of the remaindermen have died. An accounting in the Supreme Court would involve either extensive and troublesome amendments to the action earlier brought, or the bringing of a new one. The accounting would be before a referee. Frequent recourse would of necessity be made to the records and documents on file with the Surrogate's Court, this both in connection with the estate of the testator and the estates of the deceased trustees and remaindermen. The Supreme Court is not equipped with the machinery to pass upon testamentary accounts. The Surrogate's Court with such equipment has full and complete jurisdiction in this matter. Under these circumstances, the place for this accounting was wisely selected. (*Matter of Bushe*, 227 N. Y. 85; *Lawrence* v. *Littlefield, supra; Matter of Runk, supra; Sanders* v. *Soutter*, 126 N. Y. 193; *Evans* v. *Appell*, 211 App. Div. 105.)

The estate had not been divided, and income taxes were properly paid. The accounting party acted as testamentary trustee. The expenses and commissions allowed him were proper.

The decree of the surrogate should be affirmed, with costs and disbursements to all parties filing briefs.

All concur.

Decree affirmed, with costs to all parties filing briefs, payable out of the estate.