(30 App. Div. 536.)

## FAILE et al. v. CRAWFORD.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

1. DEATH OF TRUSTEE—APPOINTMENT OF SUCCESSOR—APPLICATION.
    It is not necessary, in order to confer jurisdiction upon the supreme court, upon the death of a surviving trustee, to appoint a person to execute the trust (1 Rev. St. p. 730, § 68), that all parties interested in the estate should be brought before the court.

2. SAME.
    The mere fact that a testamentary power might, upon the death of the executor, be exercised by an administrator with the will annexed, does not deprive the supreme court of jurisdiction to appoint a person to execute the power where no such administrator has been appointed.

3. TESTAMENTARY POWERS—EXECUTION.
    The provisions of a will creating a power of sale in the executors provided that no sale should be made during the lifetime of the testator's wife without her consent. The power to sell was given in a separate clause by itself, and was evidently intended to cover the purpose of distribution and settlement. Held, that it was a continuing power, and that its exercise was not confined to the period previous to the death of the widow.

4. SAME—CONSTRUCTION.
    The will provided that, upon the decease of his wife, the whole estate should be converted into cash, but that the proceeds of all sales made prior to her decease be invested on bond and mortgage. Held, that the testator did not intend to require a sale for money, but to prevent the

sale for other property except the equivalent of cash, and that, accordingly, the trustees were authorized to accept a purchase-money mortgage in part payment.

5. SALE OF REALTY—DEFECTIVE TITLE—LIABILITY FOR INTEREST.

Where a purchaser is justified, at the time for closing the title, in refusing to accept a deed for an apparent defect in the title, he should not, upon being subsequently required to perform, be charged with interest.

Appeal from special term.

Action by Samuel Faile and William H. Penfold, as trustees, against Henry J. Crawford. From a judgment directing defendant to specifically perform a contract for the purchase and sale of certain real estate, defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Eugene Frayer, for appellant.
Samuel Hoff, for respondents.

O'BRIEN, J. The property the subject of the contract sought to be enforced in this action was purchased by the defendant at public auction, and the title was to be closed on April 8, 1896. The first question presented is whether on that day the plaintiffs tendered an apparently marketable title. If they did not, even though they fortified it by evidence adduced upon the trial, it would follow that the portion of the judgment charging the defendant with interest on the purchase price would be unjust. That depends upon whether the deed tendered by the plaintiffs as trustees under the last will and testament of George Faile, deceased, was such as the defendant was bound to accept; and this, in turn, depends upon the record title of the plaintiffs. The records show a deed from one Barnard Bayley to George Faile, dated August 19, 1831, and a deed from Aaron Brown, sheriff, to George Faile. The deed from Bayley covered all the premises described in the complaint, except $^1/_{2000}$ part thereof, which was covered by the sheriff's deed; and, in the further discussion of the facts, we shall refer to these as the Bayley tract and the Fisher piece. In regard to the Bayley tract, the title thereto was derived from John Fleetwood Marsh, who on June 1, 1808, purchased certain real property, which, the plaintiffs insist, includes the premises in question, but which, as the defendant claims, includes only a portion thereof. This difference is not to be wondered at, because of the difficulty presented by the deed to Marsh in definitely locating a part, and in fixing the exact boundaries of most of the lands thus purchased. That Bayley, however, laid claim to the whole of it, is evidenced by his deed to George Faile. In his deed, Bayley described the property as that "of which John Fleetwood Marsh died seised"; but we find no deed from Marsh to Bayley, and it is the absence of this link which shows the first lapse in the record chain of the Bayley title. Marsh was an American citizen, who claimed and apparently owned the property until his death, in September, 1828, leaving a will, which was proven in the surrogate's court as a will of personal property. Such being the record, in the absence of any devise in the will of Marsh, or deed from him, it was an open question whether

Bayley claimed the property as purchaser in his own right or as the heir at law of Marsh. George Faile, under the Bayley deed of 1831, some time afterwards went into possession of the Bayley tract, and in 1835 got the Fisher piece by a deed from the sheriff, conveying "all the estate, right, title, and interest of   *   *   *   Hannah Fisher therein"; but what interest therein Hannah Fisher then or ever had is not made to appear of record. That George Faile made claim to both parcels is evidenced, not alone by his having taken possession, but by the fact that in his will he specifically mentions the property, and disposes of it by directing that, upon the death of his wife, it, together with the rest of his real estate and personal property, should be converted into cash, and the proceeds divided into four equal parts, one of which he bequeathed to his son Edward G. Faile absolutely, another to his son Thomas H. Faile absolutely, and directed that one part be held in trust to the use of his daughter Jane H., afterwards Mrs. Rutherford, for her natural life, and afterwards distributed unto and among her lawful issue then living, if any, per stirpes; and that the remaining part be invested and held in trust for the use of his daughter Joanna, wife of William Penfold, for her natural life, and at her death divided and distributed unto and among her lawful issue then living, if any, per stirpes; and further providing that, in case of the death of either of his daughters without issue then living, the share so held in trust for her should at the time of her death go to and be divided among the testator's then surviving children and the lawful issue of deceased children per stirpes. These provisions are followed by a direction that, upon the division of his estate, all his real estate should be converted into cash by sale at public auction, unless his son Thomas H. should elect to purchase the farm in question (which he did not do), and he then nominates his wife, his sons Edward G. and Thomas H., and his son-in-law William Penfold, as executors, granting to them, and to the survivors and survivor, and to such of them as should act for the time being, full power and authority to sell and dispose of all or any part of his real estate in fee simple. All qualified, except the wife, who died in 1854; and the last of the executors who qualified died in January, 1873, without making any sale of the farm in question. Thereafter, in July, 1873, an action was commenced in the supreme court, praying that some suitable and proper person be appointed to execute the trust contained in the will of George Faile under the direction of the court, and that such person be authorized and empowered to sell the real estate therein described, and to convey the same to the purchaser or purchasers, and to divide and pay over the proceeds as directed by the will. By the judgment in that action, the plaintiffs were "appointed trustees to carry into effect the trust contained in the last will and testament of George Faile, deceased; and it is further ordered that the said Samuel Faile and William H. Penfold, and the survivor of them, have all the powers of the original trustees and executors named in the will of the said George Faile, and that they have power and authority to make sales of real estate, convey the same to the purchaser or purchasers, and distribute and dispose of the proceeds of sale in like manner and as fully and completely as if they had been named

by the said testator in his said will, and clothed with the powers therein conferred upon his executors and trustees."

In assailing the efficacy of this judgment, the appellant contends that there were six remainder-men who were not made parties to that action, and upon whom the judgment is not binding, all of them grandchildren of Edward G. Faile; and each of whom, it was claimed, were under the will of Thomas H., son of George Faile, entitled to a vested remainder in some portion of his one-fourth of the farm in question. Thomas Hall Faile was entitled under his father's will to a one-fourth interest in the farm or the proceeds when converted into cash, and, having died unmarried and without issue, he left a will, by the terms of which he divided it among his nieces and nephews and their issue, appointing for that purpose trustees. These latter were parties to the action, as was every other person having an interest of any kind, except the six remainder-men mentioned, who, it is claimed by the plaintiffs, were represented by the trustees appointed by the person through whom they derived any interest in the property. If the action in the supreme court had been one in partition, there might be some force in the suggestion that these remainder-men should individually have been made parties. But considering the nature of the action, which was brought for the purpose merely of having some person appointed to execute the trust, a moment's consideration will show that the absence of these remainder-men in no way affected the jurisdiction of the court or the validity of the judgment entered. The court, upon the facts being brought to its attention upon an ex parte application, made by any one interested in the trust estate, could have appointed a suitable person to execute the trust in the will under its direction. Upon the death of a surviving trustee, the trust devolves upon the court, and the power is given the latter (1 Rev. St. p. 730, § 68) to appoint a person to execute the trust (Brater v. Hopper, 77 Hun, 246, 28 N. Y. Supp. 472). In the action there was a failure to observe the distinction between the right of the court to appoint a substituted trustee and its right to appoint a person to act under its direction to execute the trust. But this was in no way fatal, for the reason that calling them trustees of George Faile, instead of their being designated as persons appointed by the court to execute the trust, was, at most, but a misnomer, and did not prevent the persons named from performing the duties which were directly and precisely defined by the judgment.

Equally untenable is the further contention that the supreme court had no jurisdiction or power to entertain the action, or render the judgment appointing the plaintiffs trustees, or to clothe them with the general power of sale, which power, it is claimed, passed to the administrator with the will annexed, whose appointment was vested by law exclusively in the surrogate. As correctly said by the learned judge at special term:

"The answer to this seems to be that the plaintiffs have been duly appointed trustees for the purpose of executing the power in an action in this court, to which all of the persons in interest were made parties. The jurisdiction of the court is broad enough in such cases to sustain the judgment. Delaney v. McCormack, 88 N. Y. 174; Farrar v. McCue, 89 N. Y. 139. While apparently the cases of Mott v. Ackerman, 92 N. Y. 539, and Greenland v.

Waddell, 116 N. Y. 234, 22 N. E. 367, pronounce that such a power as is found in this case may be exercised by an administrator with the will annexed, they do not go so far as to hold that, where no such administrator has been appointed, this court may not appoint a person to execute it. Indeed, the case last quoted expressly reserves that question."

No question can arise with reference to the continuance of the power of sale given to the executors by the will of George Faile. It was not contemplated by the testator that that power should necessarily be exercised before the death of the widow, or to create a trust fund for her. There is no requirement that the power should be exercised during her life. On the contrary, it was contemplated by the testator that it might not be exercised during her life, because a distinct inhibition upon selling during the lifetime of the wife is made, unless that sale be made with her consent. Therefore, unless she did consent, the power of sale could not operate during her lifetime. Not being so exercised, it could only go into effect for the purposes of distribution or division, after her death. Upon the decease of the widow, as before stated, the estate was to be divided into four portions; one portion to go to one son, a second to another, and the remaining portions of his two daughters were to be put in trust. The power of sale is given independently of the dispository provisions, in an entirely separate clause of the will, and is one evidently to be exercised for the purposes of distribution and settlement of the estate. It is a power either to sell or dispose of all or any part of the real estate in fee simple, and necessarily applies to a sale for the purpose of converting it into cash, and to constitute the four equal separate parts to be made by division, after the death of the widow. Hence it is a continuing power for the purposes of distribution.

When the action was commenced and the judgment rendered, only one of George Faile's daughters survived, namely, Mrs. Rutherford; and the supreme court had previously appointed Samuel Faile trustee for the share set apart for her use. Upon this the appellant bases the additional objection to the judgment that as the beneficiaries of the trust, except Mrs. Rutherford, were dead, and as she had a trustee appointed for her share, the trusts themselves terminated, and the trust estate was ended. There was no inconsistency in the appointment of a trustee for Mrs. Rutherford's share, or insuperable bar to the court in the supreme court action appointing the plaintiffs. Mrs. Rutherford's trustee was a party to that action, and the judgment was therefore as binding upon him as upon any of the other parties. Nor do we think it important to determine the question as to when the trusts terminated, because it would only result in our concluding either that the plaintiffs, when appointed, had conferred upon them a power of sale as trustees, or they were vested with the naked power of sale for the purpose of selling the property and making distribution as provided by the will. In either view, they had power to sell.

The insistence that, in taking back a purchase-money mortgage in part payment, the plaintiffs exceeded their power, we think, is without merit. The will does say:

"Upon the decease of my wife, I order and direct the whole of my estate, real and personal, to be converted into cash, and the proceeds thereof to be divided into four equal parts."

This, however, is followed by the subsequent provision:

"And I further direct that the proceeds of all sales made prior to the decease of my said wife be invested on bond and mortgage, and the interest thereof paid to my said wife during her natural life."

It is evident that what the testator meant was not a sale by which the executors and trustees should receive actual money, but a direction to prevent their selling it for other property or for anything except the equivalent of cash; and this becomes clear when we recall that, even if the property were sold during the life of the widow for actual cash, the proceeds were to be invested in bond and mortgage until the trust in her favor terminated by her death. As a purchase-money mortgage is the highest form of mortgage, no advantage would be gained by refusing to take such, and, after obtaining all the cash, invest it in a bond and mortgage on other and different property. Although the language is directory, it was not intended to be mandatory, as is evidenced by a reading of the entire will. Therefore that provision of the Revised Statutes is applicable which reads:

"Where the conditions annexed to a will are merely nominal and evince no intention of actual benefit to the party to whom or in whose favor they are to be performed, they may be wholly disregarded in the execution of the power." 1 Rev. St. p. 736, § 120.

The objections, some of which we have noticed, as to the rights of these plaintiffs to convey such title in the property as George Faile had at the time of his decease, are not, in our opinion, well taken. But upon the record title of George Faile to the property as it stood in 1896, when the deed was tendered, we think that the absence of any evidence to explain the missing link in the chain of title between Marsh and Bayley, from the latter of whom Faile took title, was sufficient to make the defendant hesitate to accept the title as not marketable.

In the recent case of Blanck v. Sadlier, 153 N. Y. 556, 47 N. E. 921, the court held that:

"Although the title tendered may in fact be good, yet if it is subject to reasonable doubt depending upon the ascertainment of some material fact extrinsic to the record title, to be found by a jury when the question arises, a purchaser in general will not be required to complete the purchase, for he is entitled to a title not only good in fact, but marketable."

Had the defendant stood on such objections, it is doubtful if the court would have compelled him to take. That Faile himself, during his lifetime, was not indifferent to fortifying his own title, is evidenced by the fact that the record shows a deed from one John Robert Marsh, of England, to Thomas Bayley, of all the real estate of which John Fleetwood Marsh died seised in the United States; and we have the deeds from Thomas Bayley to Robert Henderson, and from the latter to George Faile, conveying the Bayley tract. In this action, however, brought to compel him to take, the defendant demanded, by way of relief, "that, if the court shall determine that the plaintiff can convey a marketable title to said property, this defendant be allowed to take such title upon his complying with the said terms of sale." This necessarily was a change of position, and a demand that if the court should hold upon the trial that the plaintiffs had given

evidence of the missing link from John Fleetwood Marsh to Bayley, together with evidence of the nature of the claim made by Faile to both the Bayley and Fisher tracts, then the defendant should be allowed to take the title. The challenge thus made by the defendant was accepted by the plaintiffs, and upon the trial every doubt arising upon the naked record title was reasonably explained or dispelled and cleared up. There was shown, moreover, an undoubted title by adverse possession to both the Bayley tract and the Fisher piece. From the evidence there adduced, it appeared that George Faile entered into the possession of the Bayley tract under claim of title, and that from about the date of the deed, in 1831, down to the sale in 1896, he or his children and their descendants or tenants continuously occupied the property, which was inclosed by a substantial stone wall. That there was thus, apart from the record title, a good title obtained by adverse possession, is manifest; for we have here a period of over 60 years, with respect to both pieces of property, during which Faile and those claiming under him have continued in possession, under claim of title, adverse to all the rest of the world, which removes the probability of any one as against them being able successfully to assail such title. We are not unmindful of the fact that the statute does not run as against infants, lunatics, and incompetent persons; but if we could indulge the possibility of the existence of such, of which there is not the slightest evidence or suggestion upon the record, their rights, beyond reasonable probability, have been entirely extinguished. Moreover, we have upon the facts shown reasonable grounds for inferring that Bernard Bayley was the heir at law of John Fleetwood Marsh. His name appears as one of the legatees in his will, and he is therein designated as a relative; and there is nothing to show that there was any other relative in this country who could succeed to the property as his heir at law, the others, so far as the record shows, being aliens, resident in England. But apart from this, it appearing that George Faile and those entitled to succeed to his estate have a good title by adverse possession, and the question then remaining being simply whether it has been conveyed by these plaintiffs under the deed tendered, involving, as we have shown, a discussion of the question of the power of the court in the supreme court action to appoint them, whatever question could arise with respect to the exercise of that power was effectually disposed of upon the trial by the additional deed tendered by the plaintiffs, in which every person who had any present interest in the property under the will of George Faile, deceased, joined for the purpose of releasing their rights and confirming the plaintiffs' deed. This deed, in addition to the plaintiffs', the defendant should receive.

We therefore conclude that the plaintiffs on the trial proved that a good and marketable title to the premises mentioned in the complaint was tendered to the purchaser, and that, under the position he takes in the answer, judgment should be affirmed; but, inasmuch as there was an open and debatable question when the suit was brought respecting the title, it is not equitable to charge interest upon the bid to the defendant, and in that respect the judgment should be modified, and, as so modified, affirmed, without costs. All concur.