HAMERSCHLAG et al. v. DURYEA.

(Supreme Court, Appellate Division, First Department.    March 8, 1901.)

1. VENDOR AND PURCHASER—ADVERSE POSSESSION—EVIDENCE—ANCIENT DOCU-
MENTS.
    In an action for specific performance of a contract to convey land, books containing entries made over 50 years ago, showing that the possession of a prior owner of the land was hostile and adverse to the rights of a prior co-tenant, and bearing every evidence of genuineness, were not objectionable as a history of past transactions, or as entries in the interest of the owner, but were admissible as ancient documents to establish adverse possession of such owner as against the co-tenant.

2. SAME—MARKETABLE TITLE.
    A co-tenant conveyed property to defendant's grantor by deed purporting to convey the entire property, with full covenants of warranty and further assurance, under which defendant's grantor entered in 1834, and inclosed the property with a substantial fence, and used and improved the same for 60 years, when it deeded the property to defendant in 1889. In 1897 defendant contracted to convey the same to plaintiffs; no claim having ever been made to the property by the co-tenant of the original grantor, or any one standing in privity to him. The title of defendant's grantor to the entire property had been recognized on public maps, and its possession by public acts and occupation was shown to have been exclusive, hostile, and notorious. Held, that defendant's grantor had acquired title to the entire property by adverse possession, as against the rights of such co-tenant, and that defendant had a marketable title, which he could compel plaintiff to accept.

Appeal from special term, New York county.
Action by Joseph Hamerschlag and others against Oscar Duryea to recover earnest money and expenses paid on a contract for the

conveyance of real estate, in which defendant, by counterclaim, alleged performance, and demanded specific performance. From a judgment in favor of defendant on the counterclaim (66 N. Y. Supp. 87), plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, RUMSEY, PATTERSON, and O'BRIEN, JJ.

William H. Stockwell, for appellants.
John L. Cadwalader, for respondent.

RUMSEY, J. On the 16th of October, 1897, the plaintiffs made a contract with the defendant by which they agreed to buy of him certain premises on the north side of 113th street, in the city of New York. One thousand dollars was paid down at the time of the signing of the contract, and the plaintiffs expended $237.50 in examining the title. As a result of that examination, they refused to perform, although the defendant tendered a deed; and they afterwards brought this action to recover the money which they had expended, and the amount of the first payment. The defendant set up a counterclaim in which he insisted that he had performed the contract on his part, and that he had a good title to the premises, and demanded specific performance. A reply was served, putting at issue the facts set up in the counterclaim. At the special term the court held that the defendant had a good title, and adjudged that he was entitled to the specific performance of the contract, and from that judgment this appeal is taken.

It is conceded that the premises in question belonged in 1827 to one Ely Moore, and that Moore in the month of November of that year conveyed them to Thomas Sheperd and William Sheperd, as tenants in common. On the 26th of November, 1834, Thomas Sheperd and wife made a deed of the premises to the New York Hospital. The title derived from the New York Hospital was the one transferred to the defendant and offered to the plaintiffs, and the question is whether it has been made to appear that the New York Hospital had acquired a valid title to the whole of these premises. There is no record of any transfer from William Sheperd, nor is there any evidence of what became of him or of his title. The deed by which Thomas Sheperd undertook to convey to the New York Hospital granted all of the lots, and he gave a covenant of seisin of an absolute and indefeasible estate of inheritance in fee simple in all of the premises, with a covenant for further assurances and of warranty. That deed entirely ignored any rights of William Sheperd as tenant in common, and afforded to the New York Hospital a sufficient ground for the claim that it had become the owner of all of the premises, and, undoubtedly, if that corporation then went into possession, claiming everything that was conveyed to it by the deed, its possession was hostile to that of Thomas Sheperd's co-tenant (Sweetland v. Buell, 164 N. Y. 541, 58 N. E. 663); but yet that hostile possession was not necessarily the beginning of a title by adverse possession, as against the co-tenant. It was held in this case upon a former appeal (38 App. Div. 130, 56 N. Y. Supp. 615) that, to begin an adverse possession to raise a presumption of title

as against the co-tenant, there must be either notice to the co-tenant that the claim is made, or such open and public acts on the part of the adverse claimant as will make his possession so visible, hostile, exclusive, and notorious that notice to the co-tenant of the adverse claim may fairly be inferred. At that time the evidence showed an adverse possession on the part of the New York Hospital extending back only to 1859; and while it was undoubtedly true that such possession would be sufficient, prima facie, to establish title in the New York Hospital in an action which might be brought against it by William Sheperd or his heirs at law, yet it was thought that such a title, depending as it did upon evidence which might be rebutted by showing a disability on the part of Sheperd or his heirs to sue, was not such a one as the court would be justified in requiring the purchaser to take. The question is whether the new evidence introduced is sufficient to cure the defects in the proof which existed at the time the other appeal was here. That new evidence consists largely of ancient maps by which it was made to appear that the premises conveyed by Thomas Sheperd to the New York Hospital were inclosed by it, and were plotted upon the various maps, extending back about to the time of the original purchase, as belonging to it. This evidence was substantiated by entries in the books of the New York Hospital containing statements in respect to these lands, showing that the hospital had exercised acts of ownership upon them from time to time; that taxes had been assessed against it upon them as a portion of its property; that they had been sold for taxes; that upon the petition of the hospital, addressed to the officers of the city of New York, it was claimed that the property belonged to the New York Hospital, and was held by it as owner, and these taxes were remitted for the benefit of the hospital. There were also other entries tending to show acts done upon this property which the hospital would have had no authority to do unless it had been the absolute owner of the whole title to the land. If this evidence was competent, it was sufficient to show that the hospital was in possession of these premises claiming under an exclusive title as early as 1840, and probably earlier. As to the maps, there is no question as to the competency of this evidence, and, indeed, it does not appear that any objection is taken to them.

But it is seriously contended that the entries in the books of the hospital are not competent, because they are substantially entries in its own interest. That these books in which the entries were made are the minute books of the hospital cannot be denied. They came from the place where such books are deposited, and the evidence tended to show that they bore all the evidence of genuineness. The minutes referred to things which were done at the time the entries were made, so that they are not a history of past transactions. They are ancient, having been made over a half century ago, and they clearly come within the exceptions to the rule rejecting hearsay evidence stated by Greenleaf in volume 1, § 141 et seq. They were admitted for the precise purposes for which such evidence is competent under the rules laid down by Greenleaf,—as tending to show ancient possession,—and for the same purposes for which it was

admitted in the case of Bogardus v. Trinity Church, 4 Sandf. Ch. 633, and Dodge v. Gallatin, 130 N. Y. 117, 29 N. E. 107. There is no dispute as to the facts which are to be inferred from these books, and there is no suggestion that any adverse claim was ever set up to the right of the New York Hospital to hold this land in severalty as it claimed. We have, therefore, this situation: That the hospital, having received in 1834 a deed from a person who was apparently a tenant in common with another, by which he conveyed the whole interest in the lands, with covenants of warranty and seisin and further assurance, entered into possession under that deed, which of itself was sufficient to oust the co-tenant if the possession was accompanied by hostile acts; that such possession had continued from 1834 to 1897; that it had never been questioned by any one; and that the title had been recognized in public maps. Upon that testimony the learned justice below found that the New York Hospital entered into possession of these premises on the 26th of November, 1834, under a claim of title, and by open and public acts caused such occupation and possession to be visible, hostile, exclusive, and notorious, and devoted the premises to uses inconsistent with the right of any claimant thereto, and cultivated and improved the same, and protected it with a substantial inclosure, and that by such adverse possession the Society of the New York Hospital had acquired a good and marketable title to the whole of such premises under the conveyance to it from Thomas Sheperd. That the facts sustain this finding cannot be disputed, and the question is, then, how long a possession is necessary to create such a presumption of title by adverse possession as will warrant the court in requiring the plaintiffs to accept the conveyance offered them by the defendant. If there had been proof that William Sheperd was living when this deed was made and this possession was taken, there can be no doubt that the facts show a sufficient adverse possession to make this title marketable. If it should be presumed that William Sheperd was then dead, and that he left an infant child, just born, against whom for 21 years the statute of limitations would not run, and if there should then be added to that 21 years the 10 years granted to an incompetent person to bring an action, even then the title would be free enough from doubt to warrant the court in saying that the title was marketable. But if it could be assumed that William Sheperd, having lived 19 years, should then have died, leaving his heirs at law incompetent to sue, even then there can be no doubt that the New York Hospital would be in a situation to meet a claim made by such a person, giving to that person's rights the further extension that the law permits. In such a case, where valuable property has been held under claim of title for many years, and where it is almost necessary to be presumed that if there were any outstanding claims they would have been asserted, the court is justified in coming to the conclusion, where it appears that for 60 years there has been a claim of title by adverse possession by one against whom there has been no suggestion of a conflicting claim, that that person has acquired a good and marketable title. Such was the rule laid down in the case of Faile v. Crawford, 30 App. Div. 536, 52 N. Y.

Supp. 353; and within the rule laid down in that case and in the case of Cambrelleng v. Purton, 125 N. Y. 610, 26 N. E. 907, and In re Trustees of New York Protestant Episcopal Public School, 31 N. Y. 574, the judgment in this case is sustained not only by the facts, but by the law; and I think it should be affirmed, with costs. All concur.