### MARKHAM v. TIBBETTS et al.

District Court, S. D., New York.
Feb. 4. 1947.

John F. X. McGohey, U. S. Atty. and David McKibbin, Asst. U. S. Atty., both of New York City, John S. Sonnett, Asst. U. S. Atty. Gen., Harry LeRoy Jones and Albert Parker, Sp. Assts. to Atty. Gen., and Elmer J. Kelsey, of New York City, for plaintiff.

Tibbetts, Lewis, Lazo & Welch, of New York City (Murray D. Welch and George A. Dickinson, both of New York City, of counsel), for defendants Tibbetts and Lewis.

Nathaniel L. Goldstein, Atty. Gen. of New York, and Corning G. McKennee, Asst. Atty Gen., as the statutory representative of the unknown beneficiaries of gifts and trusts for educational, religious, charitable and benevolent uses and purposes.

CAFFEY, District Judge.

This is an action by the Alien Property Custodian for a declaratory judgment declaring and defining his rights as successor in interest to Martha Sakrausky and her issue, found by him to be enemy nationals, in the estates of Mary Martha Taylor and Harland B. Tibbetts, and impressing a constructive trust thereon, subject to such deductions as may be allowed by the Surrogate's Court. Plaintiff moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. All the essential facts are admitted; defendants set up only legal defenses.

Mary Martha Taylor died, a resident of Westchester County, New York, on June 2, 1943. She left two children, Martha Sakrausky and Aimee (Morecroft) Mishou. Her will, executed on June 2, 1941, was admitted to probate in the Surrogate's Court of Westchester County on November 15, 1943. She nominated as her executors, Harland B. Tibbetts and the New York Trust Company, and, in the event that Tibbetts should fail to qualify, George F. Lewis, and, in the event that Lewis should fail to qualify, Murray D. Welch. The Trust Company renounced and Tibbetts died before the will was probated, so that Letters Testamentary were issued to George F. Lewis, as sole executor.

Harland B. Tibbetts died, a resident of Kings County, New York, on July 6, 1943. His will was admitted to probate in the Surrogate's Court of Kings County on July 20, 1943, and Letters Testamentary thereunder issued to his widow, Florence G. Tibbetts.

In her will Mrs. Taylor made three separate devises and bequests in the same language, viz., "absolutely to Harland B. Tibbetts, if he shall survive me; or if he shall predecease me, then to George F. Lewis, if he shall survive me; or if he shall predecease me, then to Murray D. Welch." With respect to one of these devises and bequests, Robert C. Rand was added as a fourth legatee, if Welch should predecease her. The property so devised and bequeathed was, first, one-half, after certain cash legacies, of the capital of a trust fund created by a deed of trust between Richard T. Parker and Eben Bacon, over which she had the power of appointment (Article Four), second, two separate devises and bequests, of one-third each, of all property, etc. coming to her under the wills of her grandfather, James Parker, and her father, Richard T. Parker, over which she also had the power of appointment (Article Five), and, third, one-half of her residuary estate (Article Six). Other property was also devised and bequeathed to them in certain contingencies in the same language.

Tibbetts, Lewis, Welch and Rand were members of the firm of lawyers who had acted as her legal advisers for many years.

On January 14, 1932, they had entered into a written agreement, which will be hereafter referred to as the "1932 Agreement," with Mrs. Taylor which recited that they were members of the firm of Tibbetts, Lewis & Rand, that she had executed her last will on the same day, whereby she had bequeathed, devised and/or appointed to one of them all the property aforesaid. All this property, with the exception of one-third of the James Parker Fund, which was disposed of under another agreement executed in December, 1931, was described as the "Additional Property". The agreement

further recited that she had made such dispositions of such "Additional Property" upon the understanding that they would be disposed of by the person who should receive them in such manner as to carry out her wishes as expressed in the agreement. Her 1941 will took the place of this will, as was permitted by the agreement.

The agreement then provided that it was her wish and intent, which they agreed to respect and carry out, that the "Additional Property", so devised and bequeathed, should "be used for the benefit of Martha Sakrausky and/or her children, in the manner, to the extent and upon the conditions hereinafter expressed." The agreement explicitly bound the parties, their heirs, next of kin, executors, administrators and assigns. Mrs. Sakrausky was not a party to this agreement. The conditions contained therein were as follows:

"First: * * * Whether the said property shall be paid over outright in whole or in part, in one or more instalments, unto said Martha Sakrausky and/or her children or shall be used in whole or in part for the creation of a trust fund or funds for her and/or their benefit, upon such terms and conditions and under the laws of such state or country as may be deemed advisable, or shall be otherwise used for the purpose above stated, shall be determined in his absolute discretion by the party of the second part who receives the same. Such discretion shall be exercised after such investigation as he may deem proper to ascertain the circumstances and needs of the said Martha Sakrausky and/or her children. The necessary and proper expenses incident to such investigation, including reasonable compensation to such party of the second part for any time or effort which he may personally devote thereto, shall be payable out of the principal of the fund, together with any other expenses involved in the administration thereof, and commissions at the rate then allowed to a testamentary trustee under the laws of the State of New York, which shall be payable to such party of the second part.

"In the event that a trust fund or funds shall be created, the instrument or instruments so creating the same may, in the discretion of the maker thereof, provide that in the event of the death, before the termination of such trust or trusts, of Martha Sakrausky, leaving no issue, or of all her children, leaving no issue, then in either of such events the principal of the trust fund or funds shall be paid over by the trustee or trustees to such educational, religious or charitable institution or institutions as shall be selected (a) by the individual trustee of said fund or funds, if there be such, or (b) if there be no individual trustee thereof, then by the corporate trustee thereof, to be used for the purposes for which such educational, religious or charitable institution or institutions shall have been organized.

"If practicable, any trust fund or funds created as aforesaid shall be administered by two trustees, consisting of one of the parties hereto of the second part, and a trust company or other banking institution selected by him.

"Second: The dispositions hereinabove provided for the benefit of the said Martha Sakrausky and/or her children are predicated upon the following conditions: That neither the said Martha Sakrausky or any person claiming through her or acting on her behalf or at her instigation or with her connivance, shall in any manner whatsoever oppose or contest the probate of the will of the party of the first part, or challenge the validity or effectiveness of any of its provisions, or make or assert, whether by legal action or proceeding in any court in any jurisdiction, or otherwise, any claim or demand which is based upon any alleged blood relationship between the said Martha Sakrausky and the party of the first part. In the event of any violation of the aforesaid conditions by the said Martha Sakrausky or by any other person or persons so claiming or acting, then she and/or they shall forfeit all rights that might otherwise enure to her and/or them hereunder, and the party of the second part so receiving said property under the will of the party of the first part may refrain from disposing of the same, either outright or in trust, for the use or benefit of her and/or them, as hereinabove provided, or revoke any trust or trusts already created, and pay over the proceeds of the said property to such educational, religious or charitable institution

or institutions as he may select, to be used for the purposes for which the same shall have been organized.

"Third: The party of the first part may, at any time and from time to time, at her election, alter the provisions of her said will and testament by the execution of a new will or wills or codicil or codicils; but the obligations herein assumed by the parties of the second part shall, unless abrogated or modified by written agreement between the party of the first part and one or more of the parties of the second part, continue in full force and effect as to any and all property (exclusive of one-third of the James Parker Fund) which they or any of them may receive as devisees, legatees and/or appointees under such new will or wills, or codicil or codicils, provided that they receive due notice of the terms thereof.

"Fourth: Nothing herein contained shall be deemed to confer any irrevocable or vested right, interest or estate upon the said Martha Sakrausky or her issue or assigns, and the party of the first part may at any time or times, at her election, revoke any and all provisions heretofore, herein or hereafter made for the benefit of the said Martha Sakrausky and/or her issue.

"Fifth: In the event that any bequest, devise and/or appointment to one of the parties hereto to the second part under any will of the party of the first part should be rendered illegal, invalid or void by reason of any of the provisions of this agreement and that any court of competent jurisdiction should so determine, at the instance of a person other than the said Martha Sakrausky and not claiming through her nor acting on her behalf, at her instigation or with her connivance, then and in such event the party of the second part so receiving such property shall, first, retain for his own use out of such property or its proceeds, a sum which shall properly compensate him for any and all legal services rendered by and/or for him and for all other expenses incurred in connection with proceedings relative to the said will, and second, after making the deductions for commissions, etc. specified in paragraph First of this agreement, pay over all of the remaining principal thereof or its proceeds absolutely to the said Martha Sakrausky, or if she shall not then be living, to her issue in equal shares, per stirpes and not per capita, or, if she shall have died leaving no issue, then to an educational, charitable or religious institution or institutions selected by the said party of the second part, to be used for the purposes for which such institution or institutions shall have been organized."

In December, 1931, Mrs. Taylor and her other daughters Mrs. Mishou (then Mrs. Morecroft), had entered into another agreement, which will be hereafter referred to as the "1931 Agreement," with the four lawyers and with Mrs. Morecroft's lawyer, in which Mrs. Taylor agreed to execute a will in which she would devise, bequeath and appoint one-third of all the property as to which she had a power of appointment under the wills of James Parker and Richard T. Parker, aforesaid (the James Parker Fund), to the four lawyers, successively, in the same manner as was done in her will of June, 1941, to be administered for the benefit of Mrs. Morecroft. The provisions of this agreement are not material here but it will be noted that it covers other property than that covered by the 1932 Agreement.

On November 26, 1945, plaintiff, acting under the authority of Sections 5(b) and 7(c) of the Trading with the Enemy Act, as amended, 50 U.S.C.A. Appendix, §§ 5(b), 7(c), and Executive Order No. 9095, as amended, Title 50 U.S.C.A.Appendix, § 6 note, issued two vesting orders. One recited that, after investigation, he had found that "all right, title, interest and claim of any kind or character whatsoever of Martha Sakrausky and her issue, and each of them, in and to the Estate of Mary Martha Taylor, deceased, is property payable or deliverable to, or claimed by, nationals of a designated enemy country, Germany, namely, Martha Sakrausky and issue of Martha Sakrausky, last known address, Austria, that such property is in the process of administration by George F. Lewis, as Executor, acting under the judicial supervision of the Surrogate's Court, Westchester County, New York, and determining that to the extent that such nationals are persons not within a designated enemy country, the national interest of the United States requires that such persons be treated

as nationals of a designated enemy country (Germany), hereby vests in the Alien Property Custodian the property described above to be held, used, administered, liquidated, sold or otherwise dealt with in the interest and for the benefit of the United States."

The other order was identical with the first, except that it related to the interest of Martha Sakrausky and her children in the Estate of Harland B. Tibbetts, deceased, in process of administration by Florence G. Tibbetts, as his executrix, in the Surrogate's Court of Kings County, New York.

Certified copies of the vesting orders were duly filed, published and mailed to the proper parties. On December 5, 1945, plaintiff demanded of both the executor of Mrs. Taylor and the executrix of Mr. Tibbetts that each pay and deliver to him the property described in each respective vesting order, but the demands were refused, and this suit followed.

First: The answer of defendants pleads seven separate defenses. The first is that the complaint fails to state a claim upon which relief can be granted This is so patently without merit that it needs no discussion.

Second: The second defense is that the matters and issues set forth in the complaint were adjudicated in the Surrogate's Court of Westchester County prior to the commencement of this action.

It is alleged that in February, 1944, Lewis, as Executor of Mrs. Taylor, instituted proceedings in the Surrogate's Court of Westchester County for a construction of her will and the two agreements of 1931 and 1932, aforesaid. In his petition therefor he alleged that the provisions of her will for the legacies to Tibbetts, Lewis and Welch were made so that the property passing to such legatee would be received and administered in accordance with the terms of the two agreements; that the will failed to direct who should receive the property in the event that the legatee should die before receiving the property as legatee, or before the two agreements had been fully performed; and that he believed that it was the intention of Mrs. Taylor that the two agreements should be performed by

one of the three persons in the following order, first, Tibbetts, then Lewis and then Welch, and that it was not her intention to have them performed by the legal representative of any one or more of the three. He then asked that it be determined that he, as Executor, should pay to himself as legatee, that portion of Mrs. Taylor's estate directed to be paid to Tibbetts and that it be declared that he would receive it subject to the terms of the two agreements.

Mrs. Tibbetts filed an affidavit joining in the petition and specifically waiving any right to any of the legacies to her husband. She said that he had told her, after Mrs. Taylor's death, that Mrs. Taylor had left him a legacy but that he had no beneficial interest in it, that it was left to him subject to the terms of two contracts between her, his partners and himself, under which it was to be distributed to others, subject to the payment of costs, expenses, commissions, etc.

It is also alleged in this defense that copies of the petition of Lewis and of the affidavit of Mrs. Tibbetts were mailed to plaintiff, and that he acknowledged their receipt and asked for a copy of petitioner's brief. It is not alleged, however, that plaintiff was cited to appear, as required by Section 145 of the New York Surrogate's Court Act, or that he did appear in the proceeding. In fact, the petition alleged that the only persons interested in the proceeding were the petitioner and Mrs. Tibbetts, as Executrix and sole legatee under her husband's will.

In April, 1944, the Surrogate filed the following opinion:

"In the exercise of discretion, the court refuses to entertain this application for a construction of Article V, Sections 2 and 3 of the will of this decedent. The language of said portion of the will, giving a prescribed percentage of certain property, with respect to which the testatrix enjoyed a power of appointment, is clear and unambiguous. Under such circumstances, there is no authority for the receipt of the proffered extrinsic evidence consisting of certain inter vivos agreements executed by the testatrix and others prior to the date of the will. Matter of Smith, 254 N.Y. 283, 172

N.E. 499, 72 A.L.R. 867. The named legatee, or his estate, enjoys an absolute gift which cannot be taken away or diminished by reason of the provisions of such agreements. Petitioner, as executor, has no alternative but to carry out the clear testamentary directions."

The order of the Surrogate entered thereon, after reciting that no other persons than Lewis and Mrs. Tibbetts had been made parties to the proceeding, adjudged only

"that the language of the will of the deceased is clear and unambiguous and the Court therefore refuses to entertain the application for a construction of Article V, Sections 2 and 3 of said will," and "that the Court is without authority to receive the proffered extrinsic evidence consisting of two certain inter vivos agreements executed by the testatrix and others prior to the date of the will of the deceased."

■ This defense is also so clearly without merit that it hardly deserves discussion. Complete answers are:

1. The proceedings in the Surrogate's Court were entirely ex parte, so far as concerned the plaintiff and Mrs. Sakrausky and her children. Neither plaintiff, nor Mrs. Sakrausky, nor anyone representing her or her children appeared, or was made a party to the proceeding; in fact, plaintiff could not have been made a party, for he then had no interest in the controversy, his vesting orders not having been made until a year and nine months later. The Surrogate's order was binding only upon the parties to that proceeding.

2. The Surrogate did not decide the matters and issues set forth in the complaint here. He expressly refused to construe the will and to consider the inter vivos agreements. The statements in his opinion that Tibbetts, or his estate, enjoyed an absolute gift under the will which could not be taken away or diminished by the two agreements and that Mrs. Taylor's executor had no alternative but to carry out the clear testamentary directions were but obvious statements of the provisions of the will.

■ 3. If the Surrogate had construed the agreements, his decision would have bound no one, for a Surrogate has no jurisdiction over an inter vivos trust. Matter of Lyon, 266 N.Y. 219, 194 N.E. 682.

■ Third: In their third defense defendants allege that the matters referred to in the complaint concern heirship, will construction, and descent and distribution under the laws of New York; that those matters are already in process of administration in the two Surrogate's Courts, which have exclusive jurisdiction over them; that they are proceedings in rem; and that this Court is precluded from exercising jurisdiction over the same res.

This defense is also without merit. Exactly the same contentions seem to have been made in the recent case of Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256, an action of precisely the same character as the case at bar, where the estate was still in process of probate administration in the State court. The contentions were overruled and the jurisdiction of the Federal Court upheld. The court said:

"It is true that a federal court has no jurisdiction to probate a will or administer an estate, * * *. But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. * * *

"Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, * * * it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court."

In view of this decision it is not necessary to review the arguments advanced and the cases cited by defendants in support of their position.

Fourth: The fourth defense alleges that the provisions of Mrs. Taylor's will are

clear and unambiguous; that Tibbetts, or his estate, has a vested right, as her legatee, in an absolute gift which cannot be taken away or diminished by reason of the provisions of any other agreement, provision of law, or authority; that Lewis, as her executor, must obey her clear testamentary directions and pay over the amounts of the legacies to Tibbetts' estate; and that Tibbetts was, and his executrix is, an American citizen, residing in the United States.

█ It is difficult to understand what was intended by this defense. The only argument which defendants make is that, as all the persons concerned with the legacies to Tibbetts are American citizens, the Alien Property Custodian has no right or interest in them, and that this is the necessary result of the order of the Westchester County Surrogate, who held, without consideration of the 1931 and 1932 agreements, that the legacies are payable to the Tibbetts estate, and which thus established the law of the case. This seems to be merely a reiteration of the defense of res judicata. In any event, plaintiff does not ask that the legacies be not paid to the Tibbetts estate and, as will be shown later in this opinion, a legacy, though absolute in form, may be subjected in the hands of the legatee to the terms of an independent agreement by him as to its disposition. The defense is, therefore, insufficient.

Fifth: The fifth and sixth defenses may best be considered together. They are to the effect that persons other than Mrs. Sakrausky, such as Mrs. Mishou, Mrs. Taylor's other daughter, and the two children of Mrs. Sakrausky, are or may be entitled to a portion of the property appointed, devised and bequeathed by Mrs. Taylor, by reason of the terms of her will and of the provisions of the two agreements of 1931 and 1932; that Mrs. Mishou is an American citizen and the children of Mrs. Sakrausky are of Czechoslovakian nationality and are not enemy aliens; that the transfer of the property and interests therein to Mrs. Sakrausky, Mrs. Mishou and/or the children of Mrs. Sakrausky are based solely upon discretion, which discretion is vested solely in Mr. Tibbetts or his legal representatives; that neither he nor his executrix has exercised any discretion in the premises, or made any award, or directed the transfer of any property to be received from Mrs. Taylor's estate; that Mrs. Tibbetts, as executrix, has the right to set up an American trust and to direct that only the income therefrom, or from only a portion thereof, be payable to Mrs. Sakrausky; that because of the premises and contingencies now existing, or hereafter arising, this action is premature; that there now exists no fund which could be in issue herein; that there is no enemy alien having any present right or interest in any funds of Mrs. Taylor, and that this court is without jurisdiction in the premises.

It is not clear why reference is made in these defences to a possible right of Mrs. Mishou to a share of Mrs. Taylor's estate. Her only right to a share therein arises under the 1931 agreement, which was made for her benefit and under which plaintiff makes no claim. No reference to her is contained in the 1932 agreement, under which alone plaintiff claims, and she is not entitled to any portion of the property covered thereby.

Defendants claim that, inasmuch as Mrs. Sakrausky and her children are not enemy aliens but American citizens, the vesting orders, being only ex parte decisions, are of no force and effect and are void, or, at least, that they have the right to have it determined in this proceeding whether or not they are enemy aliens.

In the answer it is alleged that the children are of Czechoslovakian nationality and are not enemy aliens but there is no similar allegation as to Mrs. Sakrausky. Defendants, however, assert in their brief that she is not an enemy alien because she was born in Czechoslovakia and because she is the illegitimate child of Mrs. Taylor, who was an American citizen, and, under Section 605, Title 8 U.S.C.A. Mrs. Sakrausky likewise became an American citizen.

█ This question, however, cannot be raised in this action. It has uniformly been held that the finding of the Alien Property Custodian, whether right or wrong, is conclusive, and that in case of a mistake, the only remedy is by proceedings under Section 9 of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9.

In Commercial Trust Co. v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858, the court said that its two earlier decisions—Central Union Trust Co. v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 LEd. 403, and Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604—decided "that the determination of the Custodian is conclusive whether right or wrong. And it may be exercised * * * by suit and, if by suit, the suit * * * must be yielded to; the right of any claimant being postponed to subsequent assertion" (262 U.S. at page 53, 43 S.Ct. at page 487, 67 L.Ed. 858), and that "the suit is * * * not to be defeated or delayed by defenses; its only condition, therefore, being the determination by the Alien Property Custodian that it was enemy property" (262 U.S. at page 56, 43 S.Ct. at page 488, 67 L.Ed. 858).

In Ahrenfeldt v. Miller, 262 U.S. 60, 43 S.Ct. 490, 67 L.Ed. 863, Ahrenfeldt, claiming to be an American citizen, filed a petition to intervene in the Commercial Trust case and to have his asserted ownership of certain securities in process of seizure by the Custodian determined in that suit, which was brought to enforce the Custodian's demand for the securities. His petition was denied on the ground that the question could be raised only after the demand of the Custodian had been complied with and then only by proceeding under Section 9.

The assertion in these defenses that Mrs. Tibbetts, as executrix, has the right to set up an American trust and to direct that only the income therefrom, or from only a portion thereof, be payable to Mrs. Sakrausky, is hardly correct. It overlooks entirely the rights of her children. As the 1932 agreement is interpreted, all the property devised and bequeathed to Tibbetts is to "be used for the benefit of Martha Sakrausky and/or her children;" it may all be paid over outright, or it may be paid over in installments, or it may be used, in whole or in part, to create a trust fund or funds for her and/or their benefit, after such investigation as may be deemed proper as to their circumstances and needs; while no disposition of the income of any trust is made, it must be inferred from the other provisions that all the income is to be paid to them; and while no specific direction as to the disposition of the principal of any trust is made, it must also be inferred that they are to receive it, for it is only upon the death of Mrs. Sakrausky and her children, all without issue, that the principal is to go to unnamed charities. The only contingency under which Mrs. Sakrausky and her children are not to receive all the property, both principal and income, is the in terrorem provision in Paragraph Second, supra.

The gist of these two defenses really is that whether or not Mrs. Sakrausky and her children are entitled to any portion of Mrs. Taylor's estate depends, under the 1932 agreement, upon the absolute discretion of Tibbetts, he being that one of the lawyers who was entitled to receive Mrs. Taylor's legacy; that, as he died before exercising his discretion, the right to exercise the discretion devolved upon his executrix; that she has not yet exercised it and no one else can do so; and that, therefore, until she has acted, the present action is premature. All these contentions are unsound and contrary to the statutes of New York and the decisions of its courts.

The bequest to Tibbetts in Mrs. Taylor's will was absolute. The legal title to the property passing under it vested in him. But it was not his to do with as he might please, because of the 1932 agreement in which he had agreed to dispose of the property "in such manner as to carry out the wishes" of Mrs. Taylor, as expressed in the agreement, viz., that the property "shall be used for the benefit of Mrs. Sakrausky and/or her children, in the manner, to the extent and upon the conditions" thereinafter expressed. Non-performance of the agreement would constitute a fraud on Mrs. Taylor. That such an agreement is valid and creates a secret trust, provided that its purposes are lawful and capable of being carried out, and will be enforced in equity is settled law in New York. O'Hara v. Dudley, 95 N.Y. 403, 413, 47 Am.Rep. 53; Amherst College v. Ritch, 151 N.Y. 282, 323-325, 45 N.E. 876, 37 L.R.A. 305; Ahrens v. Jones, 169 N.Y. 555, 560, 62 N.E. 666, 88 Am.St.Rep. 620; Seaver v. Ransom, 224 N.Y. 233, 236, 120 N.E. 639, 2 A. L. R. 1187; Peters v. Peters, 137 App.Div. 635, 637, 638, 122 N.Y.S. 363, and Golland

v. Golland, 84 Misc. 299, 305-307, 147 N. Y. S. 263, per Cardozo, J.

The leading case is the Amherst College case. There in 151 N.Y. at pages 323-324, 45 N.E. at page 887, 37 L.R.A. 305, it was said:

"On the other hand, if the testator is induced either to make a will or not to change one after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise [citing many cases]. The trust springs from the intention of the testator and the promise of the legatee. * * * The rule is founded on the principle that the legacy would not have been given, * * * unless the promise had been made; and hence the person promising is bound, in equity, to keep it, as to violate it would be fraud. * * * The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has full effect, by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee ex maleficio, to turn over the gift to them. The law, not the will, fastens the trust upon the fund by requiring the legatee to act in accordance with the instructions of the testator and his own promise."

There can be no doubt here that the 1932 agreement is a valid one. It created a special imperative power in trust (New York Real Property Law, Consol.Laws, c. 50, Article on Powers, Sections 131, 135, 138, 157). Whether the property which passed to Tibbetts under Mrs. Taylor's will was realty, or personalty, or both, does not appear, but this Article on Powers has been held to apply to both personalty and realty. Hutton v. Benkard, 92 N.Y. 295, 305, Matter of Moehring, 154 N.Y. 423, 427, 48 N. E. 818.

The position of defendants that, because Tibbetts died before exercising his powers under the agreement, the right and power to carry out the agreement passed solely to his executrix is unsound. It is contrary to the express language of Section 111 in the Article on Uses and Trusts in the New York Real Property Law, which, by section 182, is made applicable also to trust powers and to the grantees of such powers. This section provides that

"On the death of the last surviving or sole surviving trustee of an express trust the trust estate shall not descend to his heirs nor pass to his next of kin or personal representatives; but in the absence of a contrary direction on the part of the person creating the same, such trust, if unexecuted, shall vest in the supreme court, with all the powers and duties of the original trustee or trustees, and shall be executed by some person appointed for that purpose under the direction of the court."

Section 20 of the New York Personal Property Law, Consol.Laws, c. 41, is to the same effect.

In a number of cases the New York courts have held that upon the death of the trustee of an inter vivos trust the trust vests in the Supreme Court and that the personal representatives of the deceased trustee have no power over it and can be compelled to turn over the corpus of the trust to the appointee of the court (Matter of Carpenter, 131 N.Y. 86, 29 N.E. 1005; Matter of Runk, 200 N.Y. 447, 458-463, 94 N.E. 363; Matter of Lyon, 266 N.Y. 219, 223, 224, 194 N.E. 682; Brater v. Hopper, 77 Hun 244, 246, 28 N.Y.S. 472; Wildey v. Robinson, 85 Hun 362, 364, 32 N.Y.S. 1018; Faile v. Crawford, 30 App.Div. 536, 540, 541, 52 N.Y.S. 353; Horsfield v. Black, 40 App.Div. 264, 267, 57 N.Y.S. 1006; Jewett v. Schmidt, 83 App.Div. 276, 283, 82 N.Y. S. 49; Matter of Gueutal, 97 App.Div. 530, 90 N.Y.S. 138; Williams v. Fischlein, 144 App.Div. 244, 247, 129 N.Y.S. 129, and Matter of Meehan, 104 Misc. 219, 221, 171 N. Y.S. 766.

Matter of Meehan, supra, involved a situation analogous to the one at bar. The trustee under a deed of trust died before the life tenant. The corpus of the trust came into the possession of the trustee's administratrix, who seems to have carried on the trust. After the death of the life tenant,

one of the remaindermen sought to compel the administratrix to account. Surrogate Fowler, a very learned judge, dismissed his petition on the ground, among others, that he was not a person interested in the fund, for he had no right to demand of the administratrix payment of any part of the fund, as the trust had vested in the Supreme Court under Section 20 of the Personal Property Law, to be executed by its appointee. Therefore, he said, the remainderman should apply to the Supreme Court for the appointment of a substituted trustee to take possession of the fund and execute the trust, and that such appointee would be entitled to follow the trust fund into the hands of the administratrix and compel her to account. In 104 Misc. at page 222, 171 N.Y.S. at page 768, he wrote as follows:

"The only person who would have the right to demand from the administratrix * * * the corpus of the trust fund is a substituted trustee appointed by the Supreme Court to execute the trust. The administratrix has no power or authority to execute the trust, and therefore she could not pay the corpus of the trust fund, even if it came into her possession as administratrix, * * * to the remaindermen. The distribution of the trust fund must be made by a substituted trustee."

Moreover, in Matter of Grueby, 133 Misc. 248, 232 N.Y.S. 424, the will provided that certain funds "shall go to Dartmouth College, if at the time of payment of the fund that institution shall have a course in ceramics, but I leave it entirely to the discretion of my trustee hereinafter named to select such institution as to him shall seem advisable." The Surrogate held that "the power of appointment given to the trustee to designate the institution which should take the remainder of the trust funds was clearly a personal power to be exercised by the individual named as trustee", and "was not intended to be exercised by a successor trustee, but rather by the trustee named;" that the language indicated that the power was to be exercised only at the time of payment of the funds (i. e., after the termination of the life estate), and that upon the resignation of the trustee before such time the power of appointment would pass to the Supreme Court.

From the foregoing authorities it is plain that Mrs. Tibbetts, as executrix of her husband, will have no power or authority, when she receives the legacy under Mrs. Taylor's will, to carry out the 1932 agreement. The Supreme Court, upon proper application, must appoint some one to perform the agreement and he will be the only person who will have the right to demand and receive the legacy from Mrs. Tibbetts.

Section 160 in the Article on Powers in the New York Real Property Law provides:

"If the trustee of a power, with the right of selection, dies leaving the power unexecuted, its execution must be adjudged for the benefit, equally, of all the persons designated as beneficiaries of the trust."

And Section 172 provides:

"Except as provided in this article, the intentions of the grantor of a power as to the manner, time and conditions of its execution must be observed."

In People v. Powers, 147 N.Y. 104, 109, 41 N.E. 432, 35 L.R.A. 502, it was also said:

"When a donee of a power has been given a discretion to exercise it for the benefit of others he must exercise the discretion, and its execution cannot be delegated to others; and in case he, for any reason, fails to exercise the discretion and the power falls upon the court for execution, the court distributes equally among the whole class in which the donee was authorized to exercise his discretion. 1 R.S. 734, § 100; that institution shall have a course in cera- v. Co. of Kings, 97 N.Y. 421-453."

In Smith v. Floyd, 140 N.Y. 337, 340-341, 35 N.E. 606, 607, the testator devised all his real estate to his son for life "with the right and privilege of disposing of the same by will or devise to his children, if any he should have" but, if he should die without leaving children, then he devised the real estate to the children of his daughter. The son died without having exercised the power. In this action, brought by the son's children against the daughter, the daughter claimed that, by the failure of

the son to execute the power, the testator died intestate as to the real estate and that an equal undivided half became vested in her as one of his heirs at law. It was held that the authority given to the son constituted a valid trust power under the statute and that it was imperative and not discretionary. The court said:

"If the former, equity will regard that as done which the trustee should have done, and the beneficiaries of the power will take the land in equal shares; * * *. All the conditions required to establish an imperative trust power are here presented. Authority to dispose of the property was concededly granted. The beneficiaries were distinctly designated, and there was no express declaration or provision in the grant confiding the execution of the power to the discretion of the donee. The imperative nature of the trust is not destroyed because the language creating the power is permissive. If the disposing power is given, and it is not coupled with words which expressly or by necessary implication make the donee the final arbiter of its exercise its execution must be decreed. Some positive expression of an intention to make the ultimate conveyance of the property depend upon the volition of the trustee must be found, or there must be annexed to the power some qualification plainly indicating that the donor has substituted the judgment of the donee for his own for the purpose of determining whether the authorized disposition shall eventually be made."

In Matter of Leo, 170 Misc. 491, 493, 494, 10 N.Y.S.2d 449, 452, the will provided that upon the deaths of the life tenants a sum, not to exceed $15,000, was to be devoted to one or both of two charities, and that "the destination of this Fund is entirely at the discretion and under the direction of Alma F. Wallach," who died without having made any direction. Surrogate Foley held that this was a valid special imperative power in trust and that, as the donee of the power had died, leaving the power unexecuted, "the two charitable corporations must be adjudged to be entitled to share equally in the gift of $15000."

 However, if the power or trust is to dispose of the property to such one

of a class as the donee or trustee may select, the property does not pass under Section 160, supra, upon failure of the donee or trustee to act, to all the class, for, as the court said in Waterman v. New York Life Insurance & Trust Co., 237 N.Y. 293, 298, 299, 142 N.E. 668, 669, "Division is to be made in accordance with this section in those cases, and those only, where some other division is not directed, either expressly or by implication, in default of the appointment. * * * Division among all the nephews would frustrate the testator's purpose if it were effected through any act of his. It would equally frustrate his purpose if it were effected by the law."

In Meldon v. Devlin, 31 App.Div. 146, at page 157, 53 N.Y.S. 172, at page 179, affirmed without opinion in 167 N.Y. 573, 60 N.E. 1116, the court said:

"It is settled that where a power of appointment is conferred, and the property to be disposed of, and its recipients, are both certain, the latter obtain vested rights which cannot be destroyed by the nonaction of the donee of the power." [citing Dominick v. Sayre, 3 Sandf. 555, and Smith v. Floyd, supra].

But for the two vesting orders, Mrs. Sakrausky and her two children would each be entitled to one-third of the property which is the subject of the 1932 agreement. As the result of the two vesting orders plaintiff is entitled to the share of each; that is, to all the property.

All the arguments of defendants, based on the discretion given to Tibbetts in the 1932 agreement, are effectually disposed of by the foregoing authorities and others which might be cited. These two defenses are insufficient.

Sixth: The seventh defense alleges the two agreements, that possible participants in any property which might become subject to their provisions are Mrs. Mishou, who is an American citizen, and the children of Mrs. Sakrausky, who are Czechoslovakian nationals, over all of whose rights this court has no jurisdiction, and that the demands and the relief requested by plaintiff are excessive in that only an undetermined portion of the property which may be distributed from the Taylor Estate to

the Tibbetts estate may, in the exercise of the discretion of Mrs. Tibbetts, as her husband's executrix, be, at some future date, payable or subject to a right or claim of Mrs. Sakrausky, who may or may not be an enemy alien.

Manifestly, this defense alleges nothing which has not been alleged in the previous defenses, all of which has been held to be insufficient.

Section 1, e, of the Restatement of the Law of Trusts defines a constructive trust as "a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property."

And Section 186, 1, in the Restatement of the Law on Restitutions provides that "Where a testator devises or bequeaths property to a person relying upon his agreement to hold the property in trust for or to convey it to a third person, the devisee or legatee holds the property upon a constructive trust for the third person."

▆▆▆ These statements are in accord with the decisions of the New York courts. It is established, therefore, that when Mrs. Tibbetts receives Mrs. Taylor's legacies to her husband, she will hold those affected by the 1932 agreement upon a constructive trust for the plaintiff as the successor in interest of Mrs. Sakrausky and her children.

All the parties who have any interest in those portions of Mrs. Taylor's legacies to Mr. Tibbetts which are affected by the 1932 agreement are parties to this action. As I have held that all the defenses are insufficient in law, plaintiff is entitled to judgment upon the pleadings.

Accordingly, the judgment will provide as follows:

(1) that the legacies to Harland B. Tibbetts, contained in the will of Mary Martha Taylor, vested in him absolutely and, by reason of his death subsequent to her death, they are now payable to Florence G. Tibbetts, as his executrix;

(2) that the agreement, dated January 14, 1932, between Mary Martha Taylor, Harland B. Tibbetts and others, is valid and created a special imperative power in trust;

(3) that such of the legacies to Harland B. Tibbetts as cover property described in the said agreement will be received and held by Florence G. Tibbetts, as his executrix, subject to the terms and provisions of the said agreement;

(4) that by the terms and provisions of the said agreement, the property, the subject thereof, is payable to Martha Sakrausky and her two children;

(5) that Harland B. Tibbetts having died without exercising the powers conferred upon him by the said agreement, the property, the subject thereof, became payable to Martha Sakrausky and her two children, in equal shares;

(6) that Harland B. Tibbetts having died without exercising the powers conferred upon him by the said agreement, its execution devolved upon such person as may be appointed by the Supreme Court of the State of New York;

(7) that the two vesting orders, issued by the plaintiff under date of November 26, 1945, are valid and vested in the plaintiff all right, title, interest and claim of any kind or character whatsoever of Martha Sakrausky and her children, and each of them, in and to such of the legacies to Harland B. Tibbetts, contained in the will of Mary Martha Taylor, as cover property described in the said agreement and in and to such property when it shall be received by Florence G. Tibbetts, as executrix of Harland B. Tibbetts;

(8) that the property, the subject of the said agreement, is impressed with a constructive trust in favor of the plaintiff, subject to such deductions for administration expenses, etc., as may be allowed by the Surrogate's Court of the County of Westchester, State of New York;

(9) that all persons having any interest in such of the legacies to Harland B. Tibbetts, contained in the will of Mary Martha Taylor, as cover property described in the said agreement are parties to this action;

(10) that this court has jurisdiction of this action; and

(11) that plaintiff is entitled to his costs and disbursements, to be taxed by the clerk of the court.

I think the foregoing provisions are all that are needed. If, however, plaintiff feels that additional provisions are necessary, he may include them in his proposed judgment. He must bear in mind, however, that I will not interfere with the administration of either the Taylor or the Tibbetts estates and cannot direct the executor of Mrs. Taylor to pay and deliver over the property to plaintiff. Markham v. Allen, 326 U.S. 490, 495, 66 S.Ct. 296, 90 L.Ed. 256.

Plaintiff should submit for signature a form of proposed judgment on five days' notice to defendants' attorneys.